## DAUBE v. UNITED STATES.

No. 634. Argued April 10, 11, 1933.—Decided May 8, 1933.

*Mr. John E. Hughes,* with whom *Mr. William Cogger* was on the brief, for petitioner.

*Mr. Whitney North Seymour,* with whom *Solicitor General Thacher* and *Messrs. John MacC. Hudson* and *William W. Scott* were on the brief, for the United States.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The petitioner brought suit in the Court of Claims upon a claim that for two years, 1918 and 1919, he had overpaid his income tax. As to the tax for 1918, the claim was dismissed upon the merits. As to the tax for

1919, it was dismissed upon the ground that suit had not been brought within the time prescribed by law. 59 F. (2d) 842; 1 F. Supp. 771. A writ of certiorari, restricted to the assessment for 1919, brings the case here.

The Commissioner, upon an audit of the petitioner's returns, found underassessments for 1916, 1917, and 1920, and overassessments for 1918 and 1919. A notice of the result of the audit was mailed to the petitioner on November 10, 1923, the notice by its terms being provisional and tentative. Later, and on January 31, 1924, the Commissioner signed a schedule of overassessments, $22,151.88 for 1918, and $2,628.26 for 1919, and forwarded the schedule to the Collector of the District of Oklahoma, the petitioner's residence. In accordance with the practice of the bureau, the Collector was instructed to examine the accounts of the taxpayer and apply the excess payments as a credit against taxes due for other years. Upon such examination the Collector found that there were additional assessments, still unpaid, for 1916, 1917, and 1920, in the sum of $11,277.24. This left an excess for 1918 of $10,874.64, and one of $2,628.26 for 1919, a total of $13,502.90. Upon that basis the Collector made out a schedule of refunds and credits, which he returned to the Commissioner with the schedule of overassessments.

At this stage complications developed by reason of the tax liability of a partnership of which petitioner was a member. The partnership owed the Government more than fifty thousand dollars, the amount of an excess profits tax for 1917, though the precise extent of the indebtedness was still undetermined. In anticipation of an assessment, petitioner had filed with the bureau an agreement and direction that any refund due to him individually for the year 1918 (but without mention of any other year) should be applied as a credit upon the taxes owing from the partnership. When the schedule of refunds and credits came back from the Collector, the Commissioner over-

looked the order, then on file in his office, for the merger of the two accounts, and dealt with them as separate. He made an additional assessment against the partnership for $53,012.47. On the same day, March 29, 1924, he signed an approval of the schedule of refunds and credits without applying any part of the overpayment to the partnership liability, and made out a check to the order of the petitioner for $13,502.90, which he mailed to the Collector. The Collector discovered the mistake, and instead of delivering the check returned it to the Commissioner. Thereupon the Commissioner canceled the check, revoked his earlier instructions, and ordered the Collector to apply the overpayments made by the petitioner individually upon the deficiency then owing from the members of the partnership. This order was proper to the extent of $10,874.64, the 1918 overpayment, for the credit to that extent was in accordance with the petitioner's agreement. It was an error in so far as it included the 1919 overpayment ($2,628.26), for the petitioner's agreement did not cover that year. The Collector did what the Commissioner commanded. No notice, however, of his action was transmitted to the taxpayer. There was no delivery to the taxpayer of a certificate of overassessment. There was no delivery of a copy of any schedule of refunds and credits. Six years went by, almost to the day, without demand or protest. Then, on March 28, 1930, the petitioner began this suit, asking judgment for $24,780.14 with interest. He repudiated all the credits against the partnership deficiency, as well as other credits which there is no need to go into, for he allowed them later on. At the trial the contest narrowed down to two items. The first, $10,-874.64, is the overpayment for 1918, as it stood before it was applied upon the partnership assessment. The second, $2,628.26, is the overpayment for 1919. The writ of certiorari brings up the second item to the exclusion of any other.

By § 3226 of the Revised Statutes as amended by the Revenue Act of 1921, no suit may be maintained for the recovery of any internal revenue tax erroneously or illegally assessed or collected unless begun within five years from the date of payment. Revenue Act of 1921, c. 136, 42 Stat. 268, § 1318, amending R.S. § 3226; 26 U.S. Code, § 156. This suit was not brought within the time so limited. It is therefore too late, if it is a suit for the recovery of a tax within the meaning of the statute. The petitioner insists that it is not such a suit, but one upon an account stated. The statement of an account gives rise to a new cause of action with a new term of limitation. *Bonwit Teller & Co.* v. *United States*, 283 U.S. 258, 265. We are thus brought to the question whether there was such a statement here.

If the traditional tests, familiar to the law of contracts, are to be accepted as our guide, there was no account stated between Government and taxpayer. No balance was arrived at as the result of computation and agreement. *Volkening* v. *DeGraaf*, 81 N.Y. 268, 271. The Commissioner did not inform the taxpayer that the tax had been overpaid in a determinate amount. The taxpayer did not give assent either expressly or by silence to the outcome of the audit. The essentials of an account stated in any strict or proper sense are lacking altogether. *Toland* v. *Sprague*, 12 Pet. 300, 333; *Nutt* v. *United States*, 125 U.S. 650, 655; *Volkening* v. *DeGraaf*, *supra*; *Newburger-Morris Co.* v. *Talcott*, 219 N.Y. 505, 511, 512; 114 N.E. 846. A different situation was disclosed in the *Bonwit Teller* case, *supra*. There the certificate of over-assessment had been delivered to the taxpayer. " Upon delivery of the certificate to plaintiff, there arose the cause of action on which this suit was brought." *Bonwit Teller & Co.* v. *United States*, *supra*, p. 265. Cf. *Wm. J. Friday & Co.* v. *United States*, 61 F. (2d) 370.

The argument is made, however, that the allowance of the schedule of refunds and credits on March 29, 1924, was something near to an account stated, something "equivalent" thereto, though not the standard article to be marked by the standard label. This doctrine of equivalence is borne out, we are told, by cases in this court and elsewhere, which were cited in the *Bonwit Teller* case and are again pressed upon us now. *United States* v. *Kaufman*, 96 U.S. 567, 575; *United States* v. *Savings Bank*, 104 U.S. 728; *First National Bank of Greencastle* v. *United States*, 15 Ct. Cls. 225. They fall short by a great deal of teaching such a lesson. The *Kaufman* case will serve as typical of the others, for they vary little in their facts. The Commissioner of Internal Revenue had been authorized by statute to make allowance to brewers for the value of tax stamps lost or wasted. He did make such an allowance, and certified his ruling to the Comptroller of the Treasury. The claimant suing in the Court of Claims to recover the amount of the award was met by the objection that he must prove his claim anew. This court held that the allowance by the Commissioner was effective without more to make out a *prima facie* case, and spoke of it as at least "equivalent to an account stated between private parties, which is good until impeached for fraud or mistake." There was no question in the case as to the effect of the allowance in lifting the bar of a statute of limitations. The claim had been seasonably filed and diligently pressed. There was no question as to the effect of revocation or rescission. Cf. *Ridgway* v. *United States*, 18 Ct. Cls. 707, 714, 715. What had been done by the Commissioner had never been undone. There was only the question as to the probative force of an adjudication by an officer who had been appointed to decide and had definitively decided. The statute had given him the position of an administrative tri-

bunal. He had done all that he could do. He had made the allowance and had certified his action to the disbursing agents of the treasury, whose duty was not to revise, but merely to obey. Notice of his action had been given to the claimant, who had accepted and approved it. *Kaufman* v. *United States*, 11 Ct. Cls. 659, 662. The suit was on an award which had all the finality and authority that an award could ever gain.

A very different situation is laid before us here. No definitive adjudication in favor of this taxpayer was ever made by the Commissioner or by other competent authority. The transaction never went beyond the stage of intradepartmental conference and parley. The Commissioner had put his hand, it is true, to a schedule of refunds and credits, and had transmitted a check to one of his subordinates to be delivered to the claimant. By none of these acts had he so divested himself of control as to generate rights or interests in favor of the taxpayer if there was revocation or rescission in advance of notice or delivery. There had been messages back and forth between the officers and branches of an administrative bureau. There had been none to the outer world. The Commissioner, after signing the schedule, might scratch out his signature, and declare it inadvertent. Cf. *Ridgway* v. *United States, supra; Austin Co.* v. *Commissioner*, 35 F. (2d) 910. This in substance is what he did. After signing a check and mailing it to his agent, he might cancel the check while the agent still held it, and revoke the authority improvidently granted. The matter was still *in fieri*.

High public interests make it necessary that there be stability and certainty in the revenues of government. These ends are not susceptible of attainment if periods of limitation may be disregarded or extended. By the ruling in the *Bonwit Teller* case a specific limitation applicable to claims for the recovery of taxes is set aside and superseded whenever the statement of an account sustains the

inference of an agreement that the tax shall be repaid. As soon as this appears, a fresh term of limitation is born and set in motion. It is a ruling not to be extended through an enlargement of the concept of an account stated by latitudinarian construction.

*Girard Trust Co.* v. *United States*, 270 U.S. 163, and *United States* v. *Swift & Co.*, 282 U.S. 468, are pressed upon us by counsel as helpful to the taxpayer. They do not touch the case at hand. In the case of the *Girard Trust Co.*, a statute called for interest on the amount of the refund to the date of allowance. The claimant made the point that allowance was not perfected unless accompanied by payment, and that interest on the refund should be correspondingly extended. The court rejecting that contention held that allowance was complete within the meaning of the statute when the schedule of refunds was approved by the Commissioner. In the case of *Swift & Co.*, a like ruling was made as to the effect of the approval of a credit. In neither case was there any question as to the existence of an account stated, or as to the effect of an improvident allowance, unknown to the taxpayer.

The judgment is *Affirmed.*