## GOODENOUGH v. UNITED STATES
### (three cases).
### Nos. 42825–42827.

Court of Claims.
May 3, 1937.

256

John W. Davis, of New York City (Montgomery B. Angell, Allen A. Dobey, and Davis, Polk, Wardwell, Gardiner & Reed, all of New York City, on the brief), for plaintiffs.

George H. Foster, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar,

both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The three cases named in the separate findings of fact preceding have been submitted to the court together by counsel for the respective parties, having each filed but one brief. While the computation of the tax will involve the consideration of some details that are not the same in each case, the views expressed in this opinion on matters controlling the decision, and the ultimate conclusion stated herein, will apply equally to all of the cases and in connection with the separate findings of fact enable judgments to be rendered in each of them.

In each case the suit is brought to recover income taxes alleged to have been overpaid for the year 1919 by Philip H. Gray, David Gray, and Paul R. Gray, respectively. These parties were deceased when the actions were commenced and Luman W. Goodenough is the testamentary trustee under the will of Philip H. Gray, and also under the will of Paul R. Gray. Luman W. Goodenough and Martha Platt Gray are trustees in the case of David Gray. The parties named were living in 1920 and each filed during the month of March his income tax return. About May 1, 1920, each taxpayer filed an amended return and the amount of the tax as disclosed in the original return together with the increase shown in the amended return in each case was paid in installments during the year 1920. In the following year a claim for refund was filed in each case alleging that the additional income reported in the amended return was in reality income for 1917 and not for 1919. This claim was ultimately rejected and there is now no controversy in relation to it.

In each case an additional tax was assessed in 1923 and later paid. The amount of this additional assessment was later refunded with interest (see finding 18) and is not now in controversy.

On March 12, 1925, the Commissioner made a jeopardy assessment against each of these three taxpayers of $2,627,309.05. Notice was given of this assessment and demand made for payment.

On March 18, 1925, duly authorized representatives of the taxpayers came to Washington and told Mr. Nash, then Acting Commissioner of Internal Revenue, to whom they were referred, that they desired to file waivers of the statute of limitation in each case in order to secure the withdrawal of the additional assessment. Philip H. Gray was then deceased and the Acting Commissioner stated that an executor could not waive the benefit of the statute of limitations. As to the other two, the Acting Commissioner stated that an assessment having been made and entered on a collector's books, it could not be withdrawn, and accordingly the Treasury Department would not accept waivers of the statute of limitations made by them. The Acting Commissioner further stated that the Treasury Department was then making arrangements for the filing of personal bonds without sureties in the three cases and said: "You can file your claim in abatement and accompany it by these bonds and that will operate just as a waiver and you would (will) accomplish the same purpose as you would if you filed waivers here."

After some controversy with reference to the form of the bonds, about March 23, 1925, claims for abatement of the several jeopardy assessments against the Grays were filed with the collector at Detroit and personal bonds without sureties were filed in each case in the form prescribed by the collector. Each of these bonds bound the obligee to pay all taxes found to be due from the principal together with penalties and interest lawfully accrued.

Following the filing of the claims for abatement and after hearings thereon, the Commissioner, on November 19, 1925, allowed the claims in part and rejected them in part. This had the effect to reduce the additional assessment in each case by approximately $350,000.

On January 16, 1926, David Gray, Paul R. Gray, and the estate of Philip H. Gray each took an appeal with the Board of Tax Appeals and filed a petition asking for a determination of their respective income tax liability for 1919. Among other things, the petitions alleged that the Commissioner erred in determining the March 1, 1913, value of the Ford Motor Company stock which was alleged to be at least $9,489.34 per share—the figure fixed by Commissioner Roper and employed by the Grays in their returns for 1919. On June 28, 1928, the Board announced a decision that the value March 1, 1913, of the Ford

Motor Company stock was $10,000 per share, and on November 16, 1928, the Board entered its final order determining that there was an overpayment of 1919 income taxes by David Gray in the amount of $196,180.38, by Paul R. Gray in the amount of $196,023.48, and by Philip H. Gray in the amount of $197,723.11. No appeals were taken from these orders for redetermination and they have now become final.

About December 28, 1928, a certificate of overassessment was issued in favor of Paul R. Gray which indicated an overpayment of tax of $195,710.44, of which amount the Commissioner held that $185,236.05 was barred from refund and $10,474.39 refundable together with some interest that had been collected. In the case of Philip H. Gray, a certificate of overassessment was issued indicating an overpayment of taxes of $195,710.45 of which the Commissioner held that $177,569.08 was barred from refund and $18,141.37 refundable together with interest in the amount of $2,012.66 which had been collected. In the case of David Gray, the certificate of overassessment indicated an overpayment of tax in the amount of $195,710.44, of which amount the Commissioner held that $177,646.84 was barred from refund and $18,063.60 refundable together with interest in the amount of $469.94 which had been collected. The basis of the holding that part of the overpayment was barred was stated by the Commissioner to be that "no claim has been filed within the statutory period requesting refund of tax on the basis of a revised March 1, 1913, value of the Ford Motor Company stock sold." The amounts stated by the Commissioner to be refundable in the several certificates of overassessment were subsequently paid with interest by the defendant, but the Grays refused to accept this payment in complete settlement of the refunds claimed. The suits now pending are brought for the purpose of recovering the balance of the overpayment determined by the Board which the Commissioner refused to refund.

In the meantime and prior to the delivery of the certificates of overassessment, about January 28, 1929, the representatives of the Grays filed three letters with the collector at Detroit each inclosing an amended claim for refund of 1919 income taxes on behalf of the respective taxpayers and containing a request that the earlier claims be reopened and reconsidered. The new claims were the same as those previously filed with the addition of a paragraph stating in substance on behalf of each taxpayer that in his return for 1919 he had computed his profits upon the sale of 525 shares of the Ford Motor Company stock upon the basis of a March 1, 1913, value of $9,489.34 a share, but that upon petition to the Board of Tax Appeals the Board had determined such value to have been $10,000 per share and had redetermined the tax due and fixed an overpayment accordingly. These claims were afterwards considered and rejected.

The plaintiffs complain because the findings do not set out proceedings instituted by Senator Couzens before the Board of Tax Appeals whereby he procured a refund of approximately $997,000 as an overassessment on the sale of stock of the Ford Motor Company. But while the facts in relation to this matter appear in the testimony, we think they merely show that the Board of Tax Appeals' decisions were harmonious and add nothing to plaintiffs' case.

It is conceded that in each case the tax of the plaintiff's testator has been overpaid, but the defendant contends that no proper claim for refund was filed within the time prescribed by the statute and that plaintiffs' cause of action is barred.

The statutory provisions with reference to the time when refund claims must be filed and suits thereon instituted are so familiar that we do not need to set them out. The evidence shows that the only claims which were filed within four years of the payment of the tax or within five years of the filing of the returns were filed January 10, 1921, and in practically identical form March 23, 1922. These claims related solely to the question of whether the dividends received in 1919 were income for that year, and it is now conceded that no refund is due any of the plaintiffs on that ground. But it is argued on behalf of the plaintiffs that the cases now before us come under an exception to the general rule for the following reasons:

(1) That any defect in the claims for refund filed January 10, 1921, and March 23, 1922, was waived by the Commissioner, and that in any event they were amended by the claims for refund filed January 28, 1929, which, by reason of the original claims having been reconsidered, were

filed in time and related back to the date when the former claims were filed.

(2) That the filing of bonds on the part of the plaintiffs for the payment of any amount which should be found due upon the tax operated as a waiver of all limitations pertaining to the enforcement of the tax and extended the period of limitations within which claims might be presented, with the result that the petitions filed by plaintiffs with the Board of Tax Appeals were filed within the period required by the statute in order that the overpayment adjudged might be refunded.

(3) That the certificates of overassessment following the decision of the Board of Tax Appeals amounted to an account stated which was accepted by plaintiffs and suit brought within six years thereafter.

On the part of the defendant it is contended that none of the propositions presented are well founded and we will consider the issues so raised in the order above stated.

We think that the claims of plaintiffs were reconsidered, and have accordingly so found. The evidence shows that for some time prior to March 12, 1925, the Commissioner had before him under consideration the question of the fair market value March 1, 1913, of the Ford Motor Company stock, and about January 17, 1929, the Commissioner advised each plaintiff that a certificate of overassessment had been scheduled. In each case this certificate of overassessment was received by the plaintiff shortly after and showed that part of the overassessment was to be refunded and stated that the remainder was barred from allowance "inasmuch as no claim has been filed within the statutory period requesting refund of tax on the basis of a revised March 1, 1913, value of the Ford Motor Company stock sold."

January 28, 1929, additional claims were filed based on an alleged error in fixing the value of the Ford Motor Company stock and the decision of the Board of Tax Appeals. In each case the claim was designated as an "amended claim for refund of taxes illegally collected" and application was made for the reopening and consideration of the claims as amended. The General Counsel of the Bureau acknowledged receipt of the letter of January 28, 1929, and advised counsel that a date would be assigned for a hearing in connection with the claims. Thereafter a number of hearings were had, and it was repeatedly stated to the representatives of the plaintiffs in substance that the matter of plaintiffs' claims would be carefully considered. Briefs were also filed and examined. March 23, 1931, the Commissioner wrote counsel for the three Grays that long and careful consideration had been given to their contentions and that he was compelled to deny their request. Thereupon counsel for the three Grays presented a communication to the Commissioner which reiterated some of the previous arguments and in addition called attention to recent decisions of the Supreme Court. Replying to this letter the Commissioner indicated that its contents would be given consideration and that he would reconsider the rejections which he had made. Thereafter, there were more hearings and conferences, affidavits were filed, and the Undersecretary of the Treasury on March 22, 1932, wrote the Grays that the letters and affidavits filed by them bearing on the interpretation of the bonds would be carefully considered and counsel would be advised further. Finally on June 28, 1933, the Treasury Department sent the representatives of the plaintiffs a letter in which it was said that the cases submitted had been examined, that the other points had been made the subject of consideration and reconsideration, and in substance that the request for allowance of the claims could not be granted.

If, when the request for reconsideration was made, the Commissioner had announced that he would reconsider the claims, hear all arguments, and receive any other matter which the plaintiffs wished to submit, we do not know what more could have been done. The evidence justifies the conclusion as an ultimate fact that a reconsideration was had. We think that this conclusion does not dispose of the question of whether the claim filed January 28, 1929, which was later rejected, could be considered in law as an amendment to the earlier claims and relating back to the date when they were filed, but the views which we take of the issue next considered make it unnecessary for us to pass on this point or to otherwise determine the effect of the reconsideration.

Taking up next the question of whether the proceedings before the Board of Tax Appeals and its decision were such as to require the overpayment to be refunded without any further claim being

272

filed, it becomes necessary to examine the statutes applicable to the facts in the case as shown by the evidence.

Section 507 of the 1928 act (45 Stat. 871) reads as follows: Section 284(e) of the Revenue Act of 1926 is amended to read as follows: "(e) If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer as provided in subdivision (a). Unless claim for credit or refund, or the petition, was filed within the time prescribed in subdivision (g) for filing claims, no such credit or refund shall be made of any portion of the tax paid more than four years (or, in the case of a tax imposed by this title, more than three years) before the filing of the claim or the filing of the petition, whichever is earlier."

In the report on the bill the Ways and Means Committee, among other things, said: "In order, however, to give the taxpayer the full benefits of the provisions of section 284(g), it is provided that this limitation on the amount of the credit or refund shall not be applicable where either the claim or the petition was filed within the time prescribed in section 284(g) for filing a claim."

Keeping in mind that section 507 is an amendment of section 284 of the 1926 act (44 Stat. 66), we find that subdivision (a) of the section last referred to provides for the immediate refund of overpayments under certain conditions, that the amendment contained in the 1928 act changes the original wording of 284(e) and provides that the refund shall not be made unless claim for the refund "or the petition" was filed within the time prescribed by subdivision (g) for filing claims, and that subdivision (g) provides with reference to taxes for 1919 that if a waiver of the limitation on assessment has been filed the refund of any overpayment shall be made if claim therefor is filed on or before April 1, 1926. The Supreme Court in construing section 507 of the 1928 act said in Bonwit Teller & Co. v. United States, 283 U.S. 258, 263, 51 S.Ct. 395, 397, 75 L. Ed. 1018: "The section is a part of a tax law giving to taxpayers opportunity to secure refund of overpayments that had become barred. Manifestly it is to be construed liberally in favor of the taxpayers to give the relief it was intended to provide."

Section 507 of the act of 1928 pertains to proceedings before the Board of Tax Appeals as both the heading of the section and its language show. It provided that if *either* the claim or the petition was filed in time the refund must be made. Manifestly the word "petition" used therein refers to the petition filed before the Board. Evidently Congress in view of the fact that the Board had jurisdiction to determine overpayments and the petitioner was obliged to submit all of his claims for the year in question in his petition, considered it unnecessary and a mere duplication to present a claim for refund if the petition had been filed within the time allowed for filing a claim. Whether this was done in the case before us, we will next consider.

It has been shown in the statement of the case that the plaintiffs filed in each case a bond for the payment of any tax that might be found to be due. They were assured by the Acting Commissioner that this taken with the claim in abatement would have the same effect as the filing of a waiver which he refused to permit, but independently of this the authorities are so numerous and definite that the bond operated as a waiver even more extensive than the waiver usually filed that we do not think it necessary to refer to the cases on this point.

Having found that a waiver of the time within which assessment could be made was filed, we will next determine the effect of this waiver in connection with the proceedings before the Board of Tax Appeals.

The taxes having been paid more than four years before the filing of the petition, section 507 of the 1928 act made it necessary for the plaintiffs to show that it (the petition) was filed within the time prescribed for filing claims in subdivision (g) of section 284 of the 1926 act (44 Stat. 67). This subdivision, so far as material here, provided: "If the taxpayer has, on or before June 15, 1925, filed such a waiver in respect of the taxes due for the taxable year 1919, then such credit or refund relating to the taxes for the taxable year 1919 shall be allowed or made if claim therefor is filed either on or before April

1, 1926." In the cases before us the bonds which operated as a waiver were filed on or about March 23, 1925. The petition was filed with the Board of Tax Appeals January 16, 1926. The plaintiffs were therefore acting in time with respect to both of these matters and the statute requiring the refund to be made was mandatory. No appeal having been taken, the decision of the Board of Tax Appeals became final and was in effect a court adjudication upon which suit could be brought within six years. Its final order determining the overpayment for 1919 was made November 16, 1928, and in all three cases the action was begun within the period of limitations. As the plaintiffs have complied with the statute, we hold that their claim is not barred and they are entitled to recover the amount unpaid on their respective overpayments as determined by the Board together with interest.

The views we have expressed above are sustained by the opinion in the case of Western Wheeled Scraper Co. v. United States (C.C.A.) 72 F.(2d) 487, 489, in which the court said: "In fact, Congress, when it amended section 284(e) of the Revenue Act of 1926 * * * showed a clear intention that the filing of the petition with the Board of Tax Appeals under section 507 of the Act of 1928 * * * was to have the same effect as the filing of a claim for credit or refund if filed within the time prescribed by subsection (g) * * * for filing claims."

The case of the National Fire Ins. Co. v. United States 52 F.(2d) 1011, 1013, 72 Ct.Cl. 663, is called to our attention by counsel for defendant. We think it is in entire accord with our construction of the statute as set out above. In the case last cited it was said: "In Ohio Steel Foundry Co. v. United States, 38 F.(2d) 144, 69 Ct.Cl. 158, and Arthur Curtiss James v. United States, 38 F.(2d) 140, 69 Ct.Cl. 215, this court pointed out that in cases where the Board of Tax Appeals determines an overpayment and no question of credits is involved, and the refund of the overpayment was not barred by the statute of limitation at the time of the decision by the board, suit might be brought within six years from the date the right to the overpayment accrued as for a claim against the United States in the event the commissioner refused to refund the overpayment determined by the board." In the National Fire Ins. Co. Case, however,

the facts showed that the plaintiff had not filed its petition before the Board of Tax Appeals, or a claim for refund, within the time required by section 284(g) of the act of 1926 and the refund of the overpayment was barred by the statute of limitations at the time of the decision by the board. In the instant case we have shown that the refund was not barred but refundable under the statute.

While it is not necessary to proceed further with the case, we think it may be well to consider another branch of it. As before stated, the plaintiff in each case claims that the certificate of overassessment constituted an account stated in his favor. The defendant, however, contends that the refusal of the Commissioner to pay part of the overpayment prevents the certificate from being an account stated as to the balance unpaid. With this contention, we do not agree. In the case now before us, when the Commissioner presented the certificate of overassessment, he was stating in effect: "Here is the account of your taxes. It shows that the Government owes you a certain amount but I will pay only part of it as the remainder is barred by the statute of limitations." It will be observed there was no dispute as to the account. In fact the parties were in agreement in relation to it but the Commissioner expressed his opinion that the law did not require him to pay all that it showed was due the taxpayer. Herein is the difference between the case now before us and the case of Daube v. United States, 289 U.S. 367, 53 S.Ct. 597, 77 L. Ed. 1261, and other cases of the same nature, wherein the certificate stated items of debit and credit and this court held that the plaintiff could not pick out of the account the items of credit and bring suit thereon rejecting the items of debit.

We think the basic principle involved as stated by the authorities is that a certain fixed sum must be admitted to be due, and it is this acknowledgment of indebtedness in a certain sum that gives rise to the implied promise to pay the same. Recovery on this implied promise may be barred by lapse of time and the Commissioner incorrectly asserted that it was in this case, but this does not prevent the certificate from becoming an account stated. The rule above stated has been applied by us in the following cases: Shipley Construction & Supply Co. v. United States, 7 F.Supp. 492, 79 Ct.Cl. 736, Frank H.

Gage v. United States, 14 F.Supp. 500, 83 Ct.Cl. ——, certiorari denied 57 S.Ct. 35, 81 L.Ed. ——, and Wood v. United States (Ct. Cl.) 17 F.Supp. 521. In the early case of Toland v. Sprague, 12 Pet. 300, 335, 9 L.Ed. 1093, the Supreme Court said: "* * * the question between them is not about the account, or any item in it; but as to the right of the defendant to retain the admitted balance, to repay the advances made to Pettit." And it was held there was an account stated although the right to recover thereon was disputed. Following the rule laid down in these cases, we hold that an account was stated showing the full amount of the overpayment to be due and owing, and that in each of the cases the plaintiff is entitled to recover on an account stated the amount of the unpaid balance with interest. The amount of plaintiffs' recovery will be the same whether it is based upon the decision of the Board of Tax Appeals or upon an account stated.

Judgment will be rendered accordingly, and it is so ordered.