## ROUTZAHN v. BROWN.
### No. 7781.

Circuit Court of Appeals, Sixth Circuit.
April 7, 1938.

768

W. C. Jennings, of Washington, D. C. (James W. Morris, Sewall Key, J. Louis Monarch, and Julian G. Gibbs, all of Washington, D. C., and Emerich B. Freed and Everett L. Foote, both of Cleveland, Ohio, on the brief), for appellant.

Horace Andrews, Jr., and John Hadden, both of Cleveland, Ohio (Andrews, Hadden & Putnam, of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The case is here for the second time, and is a suit to recover from the collector of internal revenue an overpayment of estate taxes after the rejection of a timely claim for refund. When the case was first tried, the collector defended upon the ground that property willed to the decedent by his deceased wife was part of his gross estate, and that the taxes collected were attributable to a determination of that fact by the Commissioner. The executor contended that the decedent had renounced his interest in his wife's estate so that the property left to him by her had never become part of his. Judgment for the collector followed, reversed by this court in Brown v. Routzahn, Collector, 6 Cir., 63 F.2d 914, with mandate of remand for new trial. Certiorari was denied, 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557.

When the case again reached the court below, the appellant filed an amended answer setting up additional distinct defenses neither adjudicated nor urged at the first trial and not reviewed upon appeal. He alleged that the decedent had transferred in contemplation of death within the meaning of section 402(c) of the Revenue Act of 1921, 42 Stat. 278, securities of the value of upwards of $3,-000,000 in trust, that they were a material part of the estate, and that their transfer was in the nature of a final disposition without consideration in money or money's worth. He also alleged that the decedent had transferred to the Cleveland Trust Company as trustee life insurance policies in sums aggregating more than $500,000, which to the amount receivable by the executor therefrom over and above exemptions were also part of the decedent's gross estate and subject to tax. He also alleged that the decedent had transferred to his son, the present appellee, under a revocable trust agreement, securities of the approximate value of $1,200,000, which were a material part of the decedent's property, and that this transfer was likewise in the nature of a final disposition in contemplation of death. He also alleged that certain deeds executed by the decedent of his interest in the realty devised to him by the will of his wife constituted a transfer in the nature of final disposition without consideration in contemplation of death. The amended answer further alleged that upon original audit and later review of the executor's estate tax return the Commissioner had erroneously failed to include as part of the gross estate of the decedent the value of the securities and the amount of realizable insurance, less exemption, so transferred, in consequence of which the estate of the decedent was under assessed in an amount exceeding the claim for refund, and that while collection of additional taxes upon the estate was barred by the statute of limitations, the plaintiff was entitled to recover nothing in his action because there had been no overpayment of the estate tax.

Over plaintiff's objection, the amended answer was received by one of the district judges. Upon retrial to the court without a jury, a second District Judge presiding, the plaintiff moved for judgment upon the ground that the answer as amended failed to allege that the new

defenses therein asserted were based upon official determination of the Commissioner, and that such omission was fatal. The collector had offered proof of intra-departmental communications between the General Counsel for the Bureau of Internal Revenue and the Deputy Commissioner in respect to recomputation of tax liability in preparation for the second trial, and now moved further to amend the answer to correspond with such proof, whereupon the court reserved decision and directed him to go forward with the evidence. At the conclusion of the trial the court overruled the motion to amend on the ground that it was untimely and unfair to the plaintiff. It likewise overruled the collector's motion for judgment, held his proofs inadequate to constitute valid defense to the petition, and gave judgment for the plaintiff.

■ The principle is now well established that upon a claim for refund the Commissioner may redetermine the entire tax liability of the taxpayer, and even though no new assessment can be made because the bar of the statute has fallen, the taxpayer is nevertheless not entitled to a refund unless he has overpaid his tax, for that is the ultimate question presented for decision. Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293. Such defense is equitable, comparable to equitable recoupment or in diminution of the plaintiff's right to recover rather than set-off, for there is no counter-demand on him, but merely a denial of his equitable right to the overpayment, and so is not even now precluded by section 275 (a) or sections 607, 609 of the Revenue Act of 1928, 26 U.S.C.A. § 275 note and sections 1670(a) (2) 1675. Stone v. White, 301 U.S. 532, 538, 539, 57 S.Ct. 851, 852, 81 L.Ed. 1265.

The executor does not challenge the validity of the principle. Supporting the judgment upon the merits, he also urges that the amendment to the answer should not have been allowed after final judgment and review because it changed the character of the controversy and made of it a new case, and that to permit it was an abuse of discretion. Walden et al. v. Bodley et al., 14 Pet. 156, 10 L.Ed. 398; Cotten v. Fidelity & Casualty Co., C.C., 41 F. 506; Bassick Mfg. Co. v. Adams Grease Gun Corp., 2 Cir., 54 F.2d 285; Peavy-Byrnes Lumber Co. v. Commissioner, 5 Cir., 86 F.2d 234, 235. He

also urges that there was violation of the mandate of this court in permitting the amendment.

■ Our mandate to the court below was for new trial without qualification or direction for judgment. In this situation we are not persuaded of its violation. Decisions such as In re Potts, 166 U.S. 263, 17 S.Ct. 520, 41 L.Ed. 994, and Peavy-Byrnes Lumber Co. v. Commissioner, supra, are not, therefore, in point.

■ While the rules governing amendments to pleadings in the federal court are liberal, and their allowance within the discretion of the court even after judgment and reversal, Mutual Life Insurance Co. v. Hill, 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 788; Smith v. Adams, 130 U.S. 167, 9 S.Ct. 566, 32 L.Ed. 895; Everhart v. Huntsville Female College, 120 U.S. 223, 7 S.Ct. 555, 30 L.Ed. 623, and while allowance should not be reviewed upon appeal unless there has been a clear abuse of such discretion, yet it is generally recognized that the character of the controversy should rarely be changed after judgment and review. It is to be expected that a defendant will submit to the court in the first instance all defenses in derogation of the plaintiff's right to recover that are known to him, or which in the exercise of diligence he should have known, and indeed in equity cases the rules, Rule 30, 28 U.S.C.A. following section 723, seem to require it. We have here two motions to amend the answer, the first adding new defenses and allowed, the second to conform the pleading to the proofs and disallowed. No good reason appears for passing upon the soundness of the court's discretion in allowing the original amendments since the movant's subsequent motion impliedly declares their ineffectiveness to permit proofs of his defense, and it is the movant who attacks the judgment.

What we have to decide is a question that transcends technical rules of pleading and involves the question whether the United States or its representatives having asserted a deficiency in estate taxes as the result of classifying specific property transferred as being part of a decedent's gross estate, and asserting no tax liability attributable to other transfers either when the deficiency assessment is made, the claim for refund denied, or a suit for recovery of an overpayment defended, may now after trial and reversal and after

the lapse of years, assert in diminution of the plaintiff's right to recover a tax liability attributable to other specific property transferred under the doctrine of equitable recoupment.

■ The suit is one at law for the recovery of an overpayment of taxes, but as has recently been said, Stone v. White, supra, it is "equitable in its function," and "its control in every case by equitable principles * * * has long been recognized." It has also been said that, "High public interests make it necessary that there be stability and certainty in the revenues of government." Daube v. United States, 289 U.S. 367, 53 S.Ct. 597, 599, 77 L.Ed. 1261. Nevertheless, in recognition of equitable concepts it has been held that determinations of the Commissioner in favor of taxpayers when made within the scope of his authority are entitled to much weight, Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018; Tucker v. Alexander, 275 U.S. 228, 231, 48 S.Ct. 45, 72 L.Ed. 253, and this court has held that when elements of tax liability are left to discretionary judgment of officers exercised in good faith, they may be reopened only if statutes give authority therefor expressly or by clear implication. Woodworth v. Kales, 6 Cir., 26 F.2d 178.

■ The present controversy between the taxpayer and the collector involved almost from the very beginning but the inclusion by the Commissioner in the decedent's estate of property willed to him by his wife. In the examination and audit of the executor's return, all facts in respect to transfers of other property by the decedent had been fully disclosed. To tentative findings of the Commissioner the executor protested, and hearings were held as to the propriety of including in gross estate not only the property left by the decedent's wife, but the corpus of the irrevocable trust, the commutable value of the policies in the insurance trust, and other items. Thereafter a determination was made that the renunciation by the decedent of his rights in the estate of his wife constituted a taxable transfer. The determination did not include other transferred property in the gross estate. A deficiency was asserted, the tax paid, and the claim for refund promptly filed. It was specific and limited. It could not well be otherwise. Even so the Commissioner was at liberty to audit the return afresh and to strike a new balance as the facts might then appear. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 70, 53 S.Ct. 278, 281, 77 L.Ed. 619.

■ The claim for refund was denied. As was said in the Memphis Cotton Oil Company Case, "Commonly, though, it seems, not always, a general audit will be necessary or will be at least a wise precaution, whether the claim is broad or narrow, if the government is to have the benefit of any compensating adjustment. There is little doubt that this conception of duty and of prudence has had recognition and emphasis in administrative practice." Whether such general audit was made by the Commissioner when he denied the refund we are unable to say, but all data respecting the several trusts was of record, and that it received attention in conformity with practice seems implicit from the statement that denial of refund was "in view of the evidence of record in this case." It is clear, therefore, that the decision both upon determination of deficiency and denial of refund was that no tax liability other than that attributable to the inheritance being part of the estate had been found. Suit followed. The collector defended solely upon the basis of liability asserted by the Commissioner in his deficiency assessment and in his denial of the claim for refund.

■ It is said that under the broad language of Lewis v. Reynolds, supra, the burden is upon the taxpayer to show that he has overpaid the tax legally due, and if not the government may retain payments already received when they do not exceed the amount which might have been properly assessed. Even so, this cannot mean that the taxpayer must in the first instance anticipate all possible claims of tax liability that may at any time be asserted by the collector, and by allegation and proof negative them all, or fail to make his case. This would place a burden upon a taxpayer seeking to recover an overpayment impossible ever for him to carry. It is implicit in his claim for refund and his declaration of overpayment in suit, each denying the validity of the only asserted basis for the deficiency, that there is no other tax liability in derogation of his right to recover. He has done all within his power to frame issues to the end that decision will forever end the controversy. Affirmation of other grounds of liability is the responsibility

of the defendant, and his also the responsibility if in the first trial all dispute is not terminated. Contemplation of the possibilities presented by present circumstances must demonstrate the point. Assuming that upon retrial the collector had asserted but one of his new defenses, that judgment had followed, reversed upon appeal with mandate for new trial, that upon the third trial the collector had again amended, added another distinct defense, and so on ad infinitum, the taxpayer might thus be prevented from ever recovering an overpayment. This cannot be the law.

■ It is urged, however, that neither the collector nor the Commissioner may waive a defense. This overlooks the fact that the Commissioner in making a determination of deficiency, or in passing upon a claim for refund, is more than a mere administrative officer. He acts as an administrative tribunal and makes an adjudication which may not by others be set aside. Daube v. United States, supra; United States v. Kaufman, 96 U.S. 567, 575, 24 L.Ed. 792; Bonwit Teller & Co. v. United States, supra. So it was said in Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 46, 72 L.Ed. 253, "If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here, it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits on a first trial without imposing upon government and taxpayer the necessity of further legal proceedings."

■ Another principle seems likewise involved. Granting the right of the Commissioner to make available to the collector equitable defenses without formal determination and assessment, impermissible after the bar of the statute has fallen, it would seem that some action of the Commissioner in revoking or amplifying a formal statutory adjudication must be established. Here there was none. The most that can be said for the intra-departmental communications offered in proof is that they show a request by the general counsel for the Bureau of Internal Revenue for a computation of possible tax liability on three different theories. Such computation was made and furnished to the general counsel but there is no assertion, finding, or determination, that any

tax liability existed, nothing at all to show that the Commissioner had changed his mind.

■ It becomes unnecessary, we think, to specifically rule that there was a waiver of defenses on the part of the collector or of the Commissioner. We are content, in view of the equitable nature of the plaintiff's claim and the defenses thereto, in view of the history of the controversy, the years that have elapsed since it arose, the change in its character wrought by the amended answer, to hold that there was no inequity or abuse of discretion on the part of the District Judge in overruling the collector's motion to further amend the answer.

■ We so rule with less reluctance since an examination of the meritorious issues involved convinces us that if the appeal must be decided upon the merits, the collector still must lose. The decedent died August 22, 1923, at the age of 75 years. Some of the insurance policies were irrevocably assigned to the Cleveland Trust Company more than 6 years prior to his death. The insurance trust and the irrevocable trust were created June 29, 1920, 3 years and 1 month prior to death, and subsequently he made his last will and testament. At the time of the transfers he was a strong, vigorous man, and continued thereafter to conduct his business as theretofore. The transfers were in furtherance of a policy long pursued of making gifts and advancements to his children out of property far exceeding his needs. The total value of the transfers was approximately $2,000,000, but they by no means exhausted his estate, the remainder of which was of approximately the value of $1,500,000. There is nothing in the stipulated facts to indicate that he was in any wise apprehensive of death. With these circumstances undisputed, the case is ruled by United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 451, 75 L.Ed. 867. There it was said: "Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition." And again: "The mere fact that death ensues even shortly after the gift does not determine absolutely that it is in contemplation of death. The question, necessarily, is as to the state of mind of the donor." Comparative analyses of the circumstances in the instant and the ruling case bear-

772

ing upon the motive for the transfers demonstrates we think conclusively that the result reached below should not be set aside.

The judgment of the District Court is affirmed.