**NEW JERSEY WORSTED MILLS v. GNICHTEL et al.**

No. 7444.

Circuit Court of Appeals, Third Circuit.

Dec. 9, 1940.

340

Laurence Arnold Tanzer, of New York City, and Burtis S. Horner, of Newark, N. J., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Arthur A. Armstrong, Sp. Assts. to the Atty. Gen. (William F. Smith, Acting U. S. Atty., and Thorn Lord, Asst. U. S. Atty., both of Trenton, N. J., of counsel), for appellees.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

The plaintiff, a New Jersey corporation, filed its income and excess profits tax returns for the years 1918 and 1919 under the Revenue Acts of 1917 and 1918, respectively, and paid the taxes due as shown thereon. Thereafter it applied to the Commissioner of Internal Revenue for a redetermination of its excess profits taxes for each of the two years upon the basis of the relief provisions contained in Section 210 of the Revenue Act of 1917, c. 63, 40 Stat. 300, 307, and Sections 327 and 328 of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1093.

Section 210 of the 1917 Act authorizes a special assessment of excess profits taxes in any case where the Secretary of the Treasury is unable to determine the taxpayer's invested capital (a material factor in the regularly prescribed method for the tax computation), and Section 327 of the 1918 Act authorizes a special assessment in several specified instances, among them being where the Commissioner is unable to determine the invested capital and where he "finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in Section 328". The corporations to which reference is thus made for comparison are "representative corporations engaged in a like or similar trade or business".

The Commissioner granted the taxpayer's application and, as a result of a special computation, determined an overassessment for each of the years in question in a substantial amount. The decision was communicated to the plaintiff by letter from the Commissioner dated April 7, 1923, and the amounts of the overassessments were refunded with interest.

By letter of March 25, 1924, the Commissioner advised the plaintiff that the redetermination of its profits tax liability was erroneous and that a recomputation of the taxes for 1918, under the relief provisions, and for 1919, under the ordinary provisions of the pertinent Revenue Acts, disclosed an additional tax liability for each year, for which assessments against the plaintiff were made immediately. Following the Commissioner's formal rejection of a claim for abatement of the additional assessments, the taxpayer petitioned the Board of Tax Appeals for a review of the Commissioner's decision. The Commissioner filed a plea in bar challenging the jurisdiction of the Board on the ground that the taxes in controversy had been assessed prior to the passage of the Revenue Act of 1924, 26 U.S. C.A. Int.Rev.Acts, page 1 et seq., which created the Board of Tax Appeals. The Board subsequently entered an order dismissing the petition for lack of jurisdiction. Cf., Blair v. Oesterlein Machine Co., 275 U.S. 220, 48 S.Ct. 87, 72 L.Ed. 249. The taxpayer did not petition for a court review of the Board's decision.

The plaintiff paid the additional assessments, using for such purpose, with the Commissioner's approval, a tax credit in favor of a wholly-owned subsidiary and a check to the order of the Collector for the balance. The plaintiff filed claims for refund of the additional taxes, to which the Commissioner responded, in due course, stating that a further computation of the plaintiff's tax liability for the year 1918 under the relief provisions of the Revenue Acts developed an overpayment of taxes by the plaintiff for that year but that the application for a special assessment for the year 1919 had been properly disallowed. Later, the overassessment for 1918, as latterly determined, was refunded to the plaintiff with interest and the claim for refund for 1919 was formally rejected.

The present action was instituted in the court below for the recovery of the net amount of profits taxes paid by the plaintiff for the years 1918 and 1919, over and above the Commissioner's original special assessments. On cross-motions for summary judgment (Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c), the court below entered judgment for the defendants (the personal representatives of the deceased Collector) from which judgment the plaintiff appeals.

The appellant contends (1) that the Commissioner's original determination of the plaintiff's tax liability for the years in question on the basis of the special assessment was the exercise of a final administrative discretion not subject to reopening by the Commissioner, (2) that the Commissioner's subsequent action in assessing additional taxes for years for which refunds had been determined and paid, without disclosing to the taxpayer the grounds for the additional assessments or affording it an opportunity for contesting the same, requires a construction of the Revenue Acts in a manner violative of the Fifth Amendment to the Federal Constitution by depriving the plaintiff of property without due process of law, and (3) that the plaintiff is entitled to recover the entire amount of the additional assessments notwithstanding that they were paid partly by tax credit and partly by cash. As it is our opinion that the plaintiff is not entitled to any recovery, it is unnecessary to consider the last contention.

The power of the Commissioner of Internal Revenue to make a special assessment of excess profits taxes under the relief provisions of the Revenue Act of 1918 is discretionary in the Commissioner. And, no court may review his exercise of the discretion, at least not in the absence of fraud or other irregularities. Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 559, 562, 48 S.Ct. 587, 72 L.Ed. 985; Heiner v. Diamond Alkali Co., 288 U.S. 502, 505, 506, 53 S. Ct. 413, 77 L.Ed. 921. This is so whether the matter assailed be the Commissioner's grant or denial of a special assessment or the correctness of his computation as the result of such assessment. Welch v. Obispo Oil Co., 301 U.S. 190, 194, 57 S.Ct. 684, 81 L.Ed. 1033. What is true with respect to the power conferred by the relief provisions of Sections 327 and 328 of the Act of 1918 is likewise true of the cognate provision in the Revenue Act of 1917 (§ 210). Duquesne Steel Foundry Co. v. Commissioner, 3 Cir., 41 F.2d 995, affirmed per curiam by the Supreme Court 283 U.S. 799, 51 S.Ct. 491, 75 L.Ed. 1422; Joseph Joseph & Bros. Co. v. United States, 6 Cir., 71 F.2d 389, certiorari denied 293 U.S. 600, 55 S.Ct. 117, 79 L.Ed. 693. Section 210 of the Revenue Act of 1917 is similar in its intended purpose to Sections 327 and 328 of the Revenue Act of 1918 which "were intended to broaden the powers of relief first conferred by section 210" of the earlier act which had been liberally construed by the Treasury. See Williamsport Wire Rope Co. v. United States, supra, 277 U.S. at page 558, 48 S.Ct. at page 588, 72 L.Ed. 985, and footnote 3.

All of this the appellant ostensibly concedes but contends that, once the Commissioner grants a special assessment and determines an overassessment which is refunded to the taxpayer, his power thereby becomes functus officio, and that, notwithstanding that the statute of limitations has not run and that no formal compromise or closing agreement with respect to the taxpayer's liability has been entered into, the Commissioner may not thenceforth reopen the assessment to correct an error then evident to him. According to the appellant's argument, any loss of taxes to the government through a mistake of the Commissioner in computing a special assessment of the profits tax under his discretionary power inures irrevocably to the

taxpayer and confers upon it a vested right to the unwarranted as well as to the warranted portion of the refund.

If the appellant's contention were to be adopted as a correct statement of the law, its tendency would be to discourage the Commissioner's exercise of his discretion in a manner favorable to the supplicating taxpayer. It is only reasonable to suppose that, when confronted with the situation which the appellant's argument would induce, the Commissioner would become reluctant to grant a special assessment in any but the clearest cases (his discretion in any event not being reviewable, cases cited ante) and even then, where a special assessment was granted, he would be inclined to postpone final action on his computation until the possibility of error seemed no longer to exist. Thus, the appellant, for the service of its own ends, would risk the attainment in general of that measure of prompt relief against hardship from the profits tax which the statutory provisions were designed to afford. The contention is the more unconscionable in the appellant's case where, as a result of the Commissioner's grant of a special assessment, the appellant has actually received an ultimate refund of roundly $320,000 on account of its 1918 profits taxes while its 1919 profits taxes were permitted to stand as correctly returned originally by the appellant under the general provisions of the Revenue Act.

█ But, more directly dispositive of the appellant's claim is the fact that it lacks legal justification. The Commissioner's power to make a corrected computation of the appellant's liability for profits taxes for the years in question continued so long as the statute of limitations with respect to the particular tax liability had not run and a formal compromise or closing agreement thereon had not been entered into between the taxpayer and the Commissioner with the approval of the Secretary of the Treasury. This rule has been applied a number of times. Page v. Lafayette Worsted Co., 1 Cir., 66 F. 2d 339, 341, certiorari denied 290 U.S. 692, 54 S.Ct. 127, 78 L.Ed. 596; Taft Woolen Co. v. United States, Ct.Cl., 38 F.2d 704, certiorari denied on the point germane here 281 U.S. 717, 50 S.Ct. 465, 74 L.Ed. 1137, affirmed on other grounds 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415; Oak Worsted Mills v. United States, Ct.

Cl., 36 F.2d 529, new trial denied, Ct.Cl., 38 F.2d 699, certiorari denied on the point here involved 281 U.S. 717, 50 S.Ct. 465, 74 L.Ed. 1136, affirmed on other grounds 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415; Austin Co. v. Commissioner of Internal Revenue, 6 Cir., 35 F.2d 910, 912, certiorari denied 281 U.S. 735, 50 S.Ct. 249, 74 L.Ed. 1150. Each of the foregoing cases was concerned with a reassessment by the Commissioner of excess profits taxes under the statutory relief provisions here involved. As to the Commissioner's power in ordinary tax cases to redetermine an assessment after payment of a refund on a prior determination, see McIlhenny et al. v. Commissioner, 3 Cir., 39 F.2d 356, 358, which received the Supreme Court's express approval in Burnett v. Porter et al., Executors, 283 U.S. 230, 231, 51 S.Ct. 416, 75 L.Ed. 996.

█ The provision in Section 3229, Revised Statutes, 26 U.S.C.A. Int.Rev.Code § 3761, for a formal and conclusive compromise of a tax in controversy prior to the Act of 1921 and, since then, the provision in that act for a closing agreement definitely concluding any determination of refund or assessment of deficiency both imply that the Commissioner's power is not exhausted by his original determination or by any action taken pursuant thereto. Cf. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379; McIlhenny v. Commissioner, supra. Even if the provision in the Revenue Act of 1921 (§ 1312, 42 Stat. 313) for a closing agreement were not pertinent to the instant case, as the appellant argues, there is still the provision in Section 3229, Revised Statutes, for a formal compromise to like purpose. But Section 1312 of the Revenue Act of 1921 is material here where the special assessment was applied for in 1922 and the redetermination was made and a refund paid in 1923. By its terms, Section 1312 applies "in any case" where, after a determination and assessment, "the taxpayer has * * * paid * * * any tax * *, or accepted any * * * refund based on such determination and assessment", etc.

In making the redetermination and assessment, the Commissioner followed the procedure ordinarily applicable upon the determination of a deficiency in cases arising under the income tax provisions of the Revenue Acts. The same course here was properly indicated. There is noth-

ing in the Revenue Acts to suggest that in the matter of a special assessment the usual rules governing the assessment and collection of income taxes shall not be followed. Section 336 of the Revenue Act of 1918 provides that the war profits and excess profits taxes imposed by that act shall be returned and paid "at the same times and places, in the same manner, and subject to the same conditions" as the income taxes imposed by Title II of that Act, section 200 et seq. But, the appellant argues that the Revenue Act of 1918 provided "for a single determination and assessment of the amount of tax due" and "did not provide for redetermination of income taxes". This contention entirely ignores the necessity for procedural requirements in the case of a special assessment. When the additional taxes which the appellant now seeks to recover were assessed, deficiency assessment procedure was governed by Section 250 of Title II (Income Tax) of the Revenue Act of 1921. It is true, as the appellant points out, that the Revenue Act of 1921, § 1400, repealing Title III, § 300 et seq., of the Revenue Act of 1918, which imposed the excess profits taxes here involved, provided that the portions repealed should remain in force for the assessment and collection of taxes which had theretofore accrued under the 1918 Act. When the appellant applied for a special assessment of its 1918 profits taxes, the Act of 1921 had become effective. In that situation, no reason appears why the procedural provisions of the 1921 Act may not be read in connection with the relief provisions of the 1918 Act, at least so far as the Commissioner's action pursuant to a special assessment is concerned.

The appellant, citing a large number of cases, argues that "The determination of an administrative officer in a matter which is by law subject to his final determination cannot be reopened by himself or by anyone else". This argument still leaves open the question as to when a determination by the Commissioner of Internal Revenue becomes conclusive upon everyone. Of the cases cited on this point by the appellant, only three are tax cases. Kaufman v. United States, 11 Ct.Cl. 659, affirmed 96 U.S. 567, 24 L.Ed. 792; Ridgway v. United States, 18 Ct.Cl. 707; and Daube v. United States, 289 U.S. 367, 53 S.Ct. 597, 599, 77 L.Ed. 1261. In the Daube case it was held that the Commissioner had not "divested himself of con-

trol" and the appellant grasps the implication that the Commissioner might so divest himself. In the Kaufman case, where the Commissioner of Internal Revenue was authorized to determine whether there had been an overpayment of stamp taxes and found that there had been, the Comptroller of the Treasury refused to honor the Commissioner's certificate of award. The Court of Claims, in validating the Commissioner's award, said that with the filing of his certificate the Commissioner had "exhausted his jurisdiction". No question of the power of the Commissioner to revise or amend his award after the filing of his certificate was involved. And in the Ridgway case, where the Court of Claims in sustaining the Commissioner's right to revoke a refund before payment, said "Until payment is made his authority over the matter is not exhausted". From this the appellant again infers that the Commissioner's power after payment is exhausted. But the case did not so hold and, quite understandably, as the question of the Commissioner's power after the payment of a refund was not before the court. Little need be said of the appellant's remaining citations on this point. None other is a tax case and all are distinguishable. Thus, in United States v. Schurz, 102 U.S. 378, 26 L.Ed. 167, where a patent for public lands had issued (a matter of title), it was held that the Commissioner's authority in respect thereto ceased contemporaneously with the patent's issuance. To like effect are Noble v. Union River Logging R. Co., 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123; Ballinger v. United States ex rel. Frost, 216 U.S. 240, 30 S.Ct. 338, 54 L.Ed. 464; Lane v. Watts, 234 U.S. 525, 34 S.Ct. 965, 58 L.Ed. 1440; Kern River Co. v. United States, 257 U.S. 147, 42 S.Ct. 60, 66 L.Ed. 175; Great Northern Railroad Co. v. Steinke, 261 U.S. 119, 43 S.Ct. 316, 67 L.Ed. 564; and West v. Standard Oil Co., 278 U.S. 200, 49 S.Ct. 138, 73 L.Ed. 265. And in Butte, Anaconda & Pacific Railway Co. v. United States, 290 U.S. 127, 54 S.Ct. 108, 112, 78 L.Ed. 222, where the Interstate Commerce Commission sat, under a provision in Section 204 of the Transportation Act of 1920, 49 U.S.C.A. § 73, as a special tribunal to determine the deficit incurred in the government's operation of the railroad, the Supreme Court held that as the statute did not provide a method of review, it was the intention

of Congress "to leave the government, as well as the carrier, remediless, whether the error be one of fact or of law". What the power of the Interstate Commerce Commission was to reopen the case after its original adjudication and to redetermine the litigated matter was not before the court and therefore was not passed upon. The case is obviously not in point here.

The contention that the Commissioner's redetermination of the appellant's profits taxes for the years 1918 and 1919, after the payment of a refund thereon, worked a deprivation of appellant's property without due process of law rests upon two false assumptions. Concluding that the Commissioner was without power to so redetermine the taxes rightly due, the appellant thereupon assumes that it acquired, by virtue of the payment of the original refund, a vested right to the whole thereof, even though the Commissioner later determined (prior to the running of the statute of limitations or the execution of a closing agreement) that the computation upon which the refund had been made was in error. The appellant then further assumes that the Commissioner's redetermination of the profits taxes in pursuance of the special assessment, without disclosing to the taxpayer the grounds for the additional assessments or affording it an opportunity for contesting the same, constituted a denial of a hearing to the appellant contrary to the requirements of procedural due process.

█ It is evident that the redetermination of an additional tax liability, after the payment of a refund as the result of an ordinary assessment, involves no question of an unconstitutional deprivation of the taxpayer's property. Cf. Burnett v. Porter et al., Executors, supra; McIlhenny v. Commissioner, supra. And it is equally evident that the same is so with respect to a redetermination in furtherance of a special assessment. Cf. Page v. Lafayette Worsted Co., supra; Taft Woolen Co. v. United States, supra; Oak Worsted Mills v. United States, supra; Austin Co. v. Commissioner of Internal Revenue, supra. The grant of a refund through the instrumentality of a special assessment is a dispensation of the sovereign's grace by which the taxpayer acquires no vested right except as ultimately concluded by the running of the period of limitations or the execution of a statutory closing agreement. The Commissioner's timely withdrawal of the dispensation, whether in whole or in part, in the further exercise of his discretionary power, does not, therefore, raise a question of a want of due process. Cf. Lynch v. United States, 292 U.S. 571, 580, 54 S.Ct. 840, 78 L.Ed. 1434; Frisbie v. United States, 157 U.S. 160, 166, 15 S.Ct. 586, 39 L.Ed. 657; United States v. Teller, 107 U.S. 64, 68, 2 S.Ct. 39, 27 L.Ed. 352.

█ The Commissioner was under no duty to apprise the appellant of the facts upon which he redetermined the special assessment. See Williamsport Wire Rope Co. v. United States, supra, 277 U.S. at page 560, 48 S.Ct. 587, 72 L.Ed. 985. The very nature of the comparative information which enters into the Commissioner's computation (the returns of "representative corporations engaged in a like or similar trade or business") obviously precludes such disclosure, especially when no right thereto can be asserted. Nor can the want of right in the taxpayer to a court review of the Commissioner's redetermination of a special assessment be any more the denial of a day in court than the want of such review with respect to a special assessment when originally made. Cf., Williamsport Wire Rope Co. v. United States, supra; Welch v. Obispo Oil Co., supra; Heiner v. Diamond Alkali Co., supra. The taxpayer's request for a special assessment of its profits taxes was its own voluntary invocation of the Commissioner's exercise of his exclusive discretion and, at the same time, an abandonment by the taxpayer of its right to proceed under the regular provisions of the Revenue Acts including its right to court review of action taken pursuant thereto. United States v. Henry Prentiss & Co., Inc., 288 U.S. 73, 87, 88, 53 S.Ct. 283, 77 L.Ed. 626; Michigan Iron & Land Co. v. United States, Ct.Cl., 10 F.Supp. 563, 570; Central Iron & Steel Co. v. United States, Ct.Cl., 6 F. Supp. 115, 116, certiorari denied 293 U. S. 563, 55 S.Ct. 75, 79 L.Ed. 663. The appellant therefore has no standing to complain of the Commissioner's action.

The judgment of the District Court is affirmed.