57 F.Supp. 70 (1944)
FELDMANN
v.
CONNECTICUT MUT. LIFE INS. CO.
No. 1759.
District Court, E. D. Missouri, E. D.
October 3, 1944.
John R. Stockham, Roscoe Anderson, and Ben L. Shifrin, all of St. Louis, Mo., for plaintiff.
*71 James C. Jones, Jr., and Orville Richardson, both of St. Louis, Mo., for defendant.
HULEN, District Judge.
Plaintiff sues as beneficiary on the accidental death clause of life insurance policies. The case is up for a second trial. The first trial resulted in a general verdict for the insurer based on the issue as to whether death of insured resulted from "poisoning", which was excluded from coverage in the policies. The judgment was by the appellate court "reversed and the cause is remanded for a new trial."[1]
The case was tried on the assumption that the insured died from an overdose of nembutal. It was the position of the insurer:
"(1) that the death was not one from accidental means;
"(2) that it was not a death from self-destruction; and
"(3) that it was a death from poisoning."
The jury returned a general verdict for the insurer and by its answer to three special interrogatories found:
"(1) that the death was one from accidental means;
"(2) that it was not a death from self-destruction; but
"(3) that it was a death from poisoning."
The case was remanded for a new trial because the instructions "nowhere told the jury on what basis it should determine whether the insured's death from nembutal was a death from poison."
1. The insurer now asks leave to file an amended answer. The original answer contained the following allegation:
"(14) Alleges that the death of Herbert B. Feldmann resulted from poisoning, to-wit, by the taking by the said Herbert B. Feldmann of an excessive amount of nembutal."
The sole change by the amendment is in paragraph "(14)," and is as follows:
"(14) Alleges that the death of Herbert B. Feldmann resulted directly or indirectly from bodily or mental infirmity or disease.
"As an alternative defense the defendant alleges that if the death of Herbert B. Feldmann was the result of an overdose of nembutal, then his death was the result of poisoning."
The insurer has filed an affidavit made by one of its attorneys, in support of its motion for leave to file such amended answer. That part of the affidavit, which we consider material, is to the effect that the plaintiff, prior to the first trial, claimed the privilege of insured's attending physician Dr. Leland B. Alford and restricted the insurer in its investigation of that phase of the case to furnishing it a written statement signed by the attending physician in which the cause of death was given as resulting from an overdose of nembutal. Plaintiff also furnished the insurer a copy of the toxicological examination of contents of insured's stomach and other organs in which it was stated that a certain amount of barbiturate identical with nembutal was found. The affidavit recites that the admission made in its original answer, that the insured's death was the result of an excessive dose of nembutal was upon reliance of the findings of the coroner at the inquest, proofs of death, written statements of Dr. Alford and the toxicological examination report. It is stated in the affidavit that the insurer "continued in the belief until quite recently that nembutal was in fact the cause of insured's death, and that both affiant and defendant now have reason to believe that nembutal was not in fact the cause of insured's death, but that death was due to natural causes."
Plaintiff resists the filing of defendant's answer on the ground that the defendant is bound by its admission as to the cause of death of the insured, as contained in its original answer, and that the amended answer attempts to set up a new defense inconsistent with the admission contained in the original answer. Plaintiff cites in support of her position the case of Standard Accident Ins. Co. v. Rossi, 8 Cir., 52 F.2d 547, 549. In that case the Court of Appeals held that the giving of notice and proof of loss was affirmatively assumed in the pleadings. The case was tried on that theory, and in the face of this state of the record the Court said:
"Appellant cannot now be heard to assert such alleged default (failure to file proof) on the part of appellee."
In sustaining the lower court in its refusal to permit the amendment the Appellate Court said:
*72 "The application to amend was not supported by any showing or proof that the defendant had been deceived or misled, or that its answer was put in under a mistake as to the facts; nor was any explanation or excuse offered as to why the original answer contained this important admission." (Italics added)
Plaintiff also cites the case of Routzahn v. Brown, Collector of Internal Revenue, 6 Cir., 95 F.2d 766. We do not consider this case authority, because the decision turns upon the construction of laws and procedure particularly applicable to tax collections.
The case of Ecker v. Potts, 72 App.D.C. 174, 112 F.2d 581 is to the effect that where a new trial is granted as to part of the issues, a retrial is accordingly restricted. That is not the case that now confronts the Court.
The judgment of the Court of Appeals and its mandate in this case does not restrict the second trial of the case, except conformity to the general rule that the proceeding shall be in harmony with and nothing shall be done inconsistent with the opinion and mandate of the Court of Appeals. Of course the opinion and mandate of the appellate court constitute the law that will govern a second trial of this case. Thornton v. Carter, 8 Cir., 109 F.2d 316.
We do not consider the situation now confronting this Court as to whether defendant shall be permitted to amend its answer like that existing in the Standard Accident Ins. Company case. In the Standard Accident Ins. Company case no explanation of any character was offered by the defendant in support of its request to withdraw an admission contained in its original pleading as to giving of notice and proof of loss. Here the defendant has filed an affidavit in support of its request for leave to file an amended answer from which it appears that a doctor who may be in possession of material evidence has been precluded from testifying on the ground of privilege. The affiant further informs the court that defendant has proceeded in this case "until quite recently" in the belief that the insured did die from an overdose of nembutal, which belief was induced in part by a written statement of the doctor whose testimony is denied the defendant. The defendant claims that it now has reason to believe that the insured died from natural causes. If the insured did die of natural causes there is no liability under the policies sued on. Defendant is attempting to raise a new defense that goes to the merits of plaintiff's case. We therefore believe that this case differs from the Standard Accident Ins. Company case in two respects: First: defendant offers an explanation and excuse for the admission or statement contained in the original answer which the defendant now seeks to withdraw; and Second: the amendment or withdrawal which the defendant sought to make in the Standard Accident Ins. Company case was of a technical nature and did not go to the merits of the cause. The insurer in the Standard Accident Ins. Company case was at all times in possession of the information as to notice and proof furnished which further distinguishes that case from the one at bar.
This Court cannot conceive of any purpose that will be served on the part of defendant, by injecting the new issue, unless it has some evidence to support it. Both sides in this cause are represented by able and eminent counsel and we do not believe either would seek to amend the pleadings as a basis for, and take time for taking depositions, for the purpose of annoyance, embarrassment or oppression of the witnesses. The affidavit filed by the plaintiff, while informative, does not change the situation.
We believe the matter should be approached in the light of Rule 15, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, providing as to amended pleadings that "leave shall be freely given when justice so requires." If the insured did die of natural causes and not by accidental means, justice would require that the defendant be permitted to present and try that issue. Such a ruling appears to us to be in accordance with the authorities on the subject. The Eighth Circuit Court of Appeals in Illinois Power & Light Corporation v. Hurley, 49 F.2d 681, loc. cit. 683 said:
"On the prior appeal this court reversed the judgment and remanded the case for further proceedings in harmony with the opinion. The action being one at law, the reversal of the judgment entitled the parties to a new trial of the action without restriction or limitation." (Italics added)
The same Court, in the case of Ohio Oil Co. v. Thompson, 120 F.2d 831, loc. cit. 835, made this observation:
"In appeals to this court from decisions of the district court on questions arising in proceedings subsequent to the mandate of *73 the Supreme Court, we may examine the opinion and mandate of that court to determine whether or not the decision is upon a question left open, upon a new issue, or upon some matter properly appealable to this court."
How could a new issue be injected into a case under the circumstances referred to except by an amendment to the pleadings?
More directly to the point is the case of Madden Furniture v. Metropolitan Life Ins. Co., 5 Cir., 127 F.2d 837, where the Court said:
"We think a new trial ought to have been had. Prior to the adoption of Rule of Civil Procedure 50, 28 U.S.C.A. following section 723c, a reversal and remand for further proceedings for an error antecedent to the verdict operated to grant a new trial. On the former appeal the errors specified were as to the admission of evidence, as to the Judge's charge, and as to the refusal of motions for a new trial. The overruling of the motions for judgments notwithstanding the verdicts were not specified as error. This court did not consider or rule upon them. The opinion mentions only the alleged errors prior to verdict. The reversal for such errors although one was the refusal to direct a verdict, with a remand for further consistent proceedings, meant a new trial with an avoidance of the same errors. The case was open for amendment of pleadings, new and additional evidence, or any handling not inconsistent with the opinion of the court." (Italics added)
Also see the case of Jones v. St. Paul Fire & Marine Ins. Co., 5 Cir., 108 F.2d 123, loc. cit. 125:
"His recognition of a right to amend so as to introduce such an issue was correct. The reversal by this Court was granted for further proceedings not inconsistent with the opinion of this Court. True it was not a jury case in which a reversal would wipe out all the evidence as presented in the former trial. It was in an equity case, in which all the evidence theretofore taken stood good, and only the judicial conclusion upon it was wiped out. The parties were free on such a reversal to introduce other evidence and to present by amendment new issues, if not inconsistent with what the appellate court had adjudged." (Italics added)
As we read the opinion of the Court of Appeals in this case, it adjudged and found there was error in the action of the trial court in submitting the interrogatory on poisoning, without telling the jury "on what basis they should determine whether the insured's death from nembutal was a death from poison." The settling of the other questions, as plaintiff by his brief admits, was by the jury. We quote"It (referring to the jury) settled every other question in the case in favor of the beneficiary." Under these conditions we think the following excerpt from the case of Cub Fork Coal Co. v. Fairmount Glass Works, 7 Cir., 59 F.2d 539 is in point:
"Inasmuch, however, as the reversal by this court was with directions to grant a new trial, the District Court properly held that all issues of fact had to be tried anew, and neither party was bound by the record made upon the previous trial."
There is a further consideration on which we believe our interpretation of the opinion of the Court of Appeals is sustained. Plaintiff urges"Here the three interrogatories submitted to the jury are entirely separable." Are they independent of each other? We believe it possible that with the explanation indicated by the Court of Appeals opinion that should accompany the interrogatory on poison, that a jury might take a different view of whether the taking of the overdose of nembutal was accidental. At least we believe it was the purpose of the opinion to direct that all questions again be submitted to the jury with the explanation directed by the Court. Hence in our opinion the Court of Appeals has not ruled on these questions as a matter of law, as claimed by the plaintiff and as was the case in the authorities cited by plaintiff such as In re N. V. Zuid-Hollandsche Scheepvaart Mattschappij of Rotterdam, 5 Cir., 64 F.2d 915.
2. Defendant has served notice to take the deposition of the plaintiff, Dr. Leland Alford, Dr. John R. Roberts, Dr. Omer E. Hagebusch and Catherine F. Frei. Plaintiff, Dr. Roberts and Dr. Hagebusch have heretofore testified in this case. Dr. Leland Alford and Catherine F. Frei have not. Defendant being granted leave to file an amended answer, bringing into the case an issue which was not before the Court on the previous trial, defendant should be permitted to interrogate, by deposition, plaintiff, Dr. Roberts and Dr. Hagebusch, concerning matters about which they were not interrogated at their previous depositions or at the previous trial, but on the subject of whether insured's death was the result *74 of an overdose of nembutal or from natural causes. Catherine F. Frei is subject to interrogation as to the issues presented by the pleadings.
Plaintiff objects to the taking of the deposition of Dr. Leland Alford, because he was the insured's attending physician at and prior to insured's death and any information acquired by him in that capacity would be privileged. Defendant's effort to avoid the effect of this well recognized rule of law is based upon the admission of certain hospital records appertaining to the insured in the first trial. Part of these records were offered by the defendant and part of them by the plaintiff. Defendant's position, as stated in its brief, is as follows:
"However, the plaintiff at the previous trial waived any privilege with respect to information acquired by Dr. Alford in his professional capacity by reading in evidence certain parts of hospital records appertaining to insured, and the Court of Appeals so held".
Such is not the holding of the Court of Appeals, as we read their opinion, and we do not find it ambiguous. The Court of Appeals was concerned only with admissibility of hospital records. The opinion of the Court of Appeals reads as follows:
"Whether the part of the record first offered by the insurer was originally privileged, we need not consider, for the beneficiary clearly waived any privilege that might have existed as to the record generally, by her subsequent offering of portions thereof in evidence." (Italics added)
We know of no case holding that the offering of a hospital record alone, no part of which had been made by the attending physician, constitutes a waiver of privilege of the attending physician's testimony, and our attention has not been called to any fact in this case that would constitute a waiver of the privilege in question.[2]
We were informed during oral argument on these motions, that the hospital records contained no entries by the attending physician Dr. Alford, that Dr. Alford was the only attending physician of insured during his last illness and that no communication between the physician and the patient, or statement of the physician, based upon information acquired by the physician while attending the insured, was offered in evidence, such as an entry in a hospital record or a death certificate. Bouligny v. Met. Life Ins. Co., Mo.App., 160 S.W.2d 474. The privilege goes only to that testimony or information acquired by the doctor in his capacity as attending physician of the insured, Section 1895, R.S. Mo.1939, Mo.R.S.A. He is not disqualified as a witness. The record now before this Court does not disclose that the sole and only information which the defendant seeks to elicit from Dr. Alford relates to information acquired by him in his privileged capacity. We are not at liberty to assume that to be the fact. It is possible that he has knowledge of facts pertinent to the case which may have come to him in some manner disconnected with his capacity as attending physician of the insured. The following order will be interpreted in accord with this memorandum:

Order
1. Application of defendant for leave to file amended answer is granted.
2. Plaintiff's motion to quash notice to take depositions by defendant is overruled.
3. Application of defendant for subpoenas duces tecum overruled as to paragraphs 3, 4 and 5 and sustained as to remaining paragraphs.
NOTES
[1] Rosemont Feldmann v. Connecticut Mutual Life Insurance Company, 8 Cir., 145 F.2d 628, 634.
[2] See case of Fitzgerald v. Metropolitan Life Ins. Co., Mo.App., 149 S. W.2d 389, loc. cit. 391, holding that the furnishing of a certificate by the attending physician as a part of the proof of loss does not constitute a waiver of the privilege as to such doctor.