## COMMISSIONER OF INTERNAL REVENUE v. UNITED STATES REFRACTORIES CORPORATION.
### No. 4875.

Circuit Court of Appeals, Third Circuit.
March 7, 1933.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen. (F. F. Toomey, C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and A. H. Fast, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for appellant.

Robert P. Smith, of Washington, D. C., and W. W. Montgomery, Jr. (of Montgomery & McCracken), of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

The question is whether the statute of limitations, as provided by section 250 of the Revenue Acts of 1918 and 1921 (40 Stat. 1082; 42 Stat. 264) and section 278 of the Revenue Act of 1926 (26 USCA § 1058 et seq.), has barred the collection of taxes assessed on a return for the calendar year 1920.

On March 15, 1921, United States Refractories Corporation, respondent in this case, filed its income and profits tax return for the year 1920 (the only year now in question) showing a tax due thereon in the sum of $30,953.68. A few days later the Commissioner of Internal Revenue made an assessment in that amount.

The respondent did not pay its 1920 tax when it made its return (or at any other time) but, accompanying the return, it filed with the collector claims for credit against its tax liability for 1920 of overpayments of taxes for 1917 and 1918.

Subsequently the Commissioner determined against the respondent a tax deficiency for 1920 in the sum of $62,494.18, or $31,540.50 in excess of the tax liability shown by its return.

In December, 1927, he mailed to the respondent a notice of a deficiency in that amount.

In February, 1928, the respondent, contesting the deficiency, filed a petition of redetermination with the United States Board of Tax Appeals.

In October, 1928, the Commissioner applied a part of the overpayments for 1917 and 1918 against the 1920 taxes remaining unpaid.

It is conceded that on these facts alone the original tax for 1920 was outlawed and its collection barred under section 250(d) of the Revenue Acts of 1918 and 1921 which limits collection or credits of taxes to five years and under section 278(d) of the Revenue Act of 1926 (26 USCA § 1061 and note) which extends the period to six years.

Within the span of these dates—1921 to 1928—things happened which, the government claims, removed the case from under the bar of the statute of limitations. They were as follows:

On February 26, 1926, shortly before the expiration of the five-years period of collection prescribed by the Revenue Act of 1921, the Revenue Act of 1926 was passed by the Congress giving the Commissioner an additional year, or six years from the date of assessment, within which to collect a tax. This extension when applied to the tax in this case ended on March 15, 1927.

On February 16, 1927, within a month of the six-years limitation, the respondent executed an instrument purporting to be a waiver extending the time within which collection might be made to December 31, 1927. This document contains a reservation to which we shall advert presently.

On December 30, 1927, one day before the expiration of the time thus extended, the respondent executed a second waiver, also with a reservation, extending the time of collection to December 31, 1928. As it was admitted that, except for these waivers, collection of the 1920 tax was barred, the case before the Board turned on their validity.

That tribunal held that both waivers were void, that liability for the tax had been extinguished by section 1106 of the Revenue Act of 1926 (26 USCA § 1249 note), and that because of these facts the credits of overpayments for 1917 and 1918 made against the respondent's tax liability for 1920 were void and the statute of limitations bars collection of any deficiency for the latter year.

We shall assume without deciding that the Revenue Act of 1926 gave the Commissioner an additional year within which to collect the tax in question, that is, until March 15, 1927.

█ A month before that date, the respondent executed the first waiver with a defect in its execution and with a reservation. The alleged defect, claimed to be fatal, is that it was signed only by the respondent taxpayer and that, though received by the Commissioner, it was not signed, accepted or acted upon by him. The reservation—matter not waived—relates to "any rights which have accrued to the company under section 250(d) of the Revenue Acts of 1918 and 1921 with respect to the statute of limitations" unless "section 278(d) of the Revenue Act of 1926 authorizes the collection of the tax after the running of the statute of limitations as provided in section 250 (d)" of the two Acts first cited.

The waiver was executed under authority of section 278 (d) of the Revenue Act of 1926, which (with our italics) provides that:

"Where the assessment of any income, excess-profits, or war-profits taxes imposed by this chapter or by *prior* Act of Congress has been made, * * * such tax may be collected * * * (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection *agreed upon* in writing *by the Commissioner and the taxpayer.*"

As the Commissioner did not sign the written waiver in this case or any other writing in relation to it, the instrument on its face shows its execution by only one of the two parties which the Act requires and thereby fails to show the agreement between the Commissioner and taxpayer which, likewise, the Act requires.

Though the statute speaks in terms of agreement, the government says, quite correctly under the decisions, that a waiver, even when signed by both Commissioner and taxpayer, is not a contract between them but, as to the Commissioner, is only an administrative act. It urges, in consequence, that the Commissioner's failure to sign the waiver in this case does not invalidate it. The Commissioner's failure to sign indicates his failure to agree to an extension. That he must agree, and must do so in writing, is a requirement of the statute. Assuredly it was made for some purpose. Though none is stated, the requirement is none the less mandatory. The purpose may be to evidence and thereby make certain against future controversy that the terms of a waiver in respect to an extension of time beyond the statute's limitation are those to which the taxpayer and Commissioner had agreed, important in this instance because the instrument contains a reservation which, we can imagine, the Commissioner would not accept and to which, therefore, he would not by his signature agree. On the other hand, as the statutory limitation for the collection of taxes is clearly made for the benefit of taxpayers, the Con-

gress may have thought that a taxpayer, when asked to give a waiver for the convenience of the Commissioner and thereby surrender the benefit the statute accords him, is in a position to impose terms which before the waiver becomes effective or legal must be acceptable to and agreed upon by the Commissioner. Otherwise a waiver prepared and signed by the taxpayer alone may waive nothing, in which case, if the waiver be valid on the unilateral signing and on a mere filing, the government might, by the Commissioner's delay, or by his ignorance of its terms, or of its extension, lose the tax. Such an eventuality is not likely to occur if he is forced to collect the tax within the term of the statute or agree upon an extension.

Whatever may be the purpose which the Congress had in mind, it is a plain legislative requirement which the Commissioner must perform. The legal effect of his signature, when made, is another matter and is one with which, in this case, we have no concern. The courts in holding that the Commissioner's signature to a waiver is an administrative act with, and without, certain legal effects, as, for instance, that it does not constitute a contract, have dealt with that aspect of the statute in cases, so far as we can discern, where always the Commissioner (as expressly or implicitly reported) had signed the waiver or some related paper. In no case brought to our attention save Commissioner v. Hind (C. C. A.) 52 F.(2d) 1075, on which the Commissioner relies, have they passed on the effect of the Commissioner's failure to perform in one way or another the statutory requirement of signing. Florsheim Bros. Drygoods Co., Ltd., v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542; Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335; Aiken v. Burnet, Commissioner, 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339; W. P. Brown & Sons Lumber Co. v. Burnet, Commissioner, 282 U. S. 283, 51 S. Ct. 140, 75 L. Ed. 343; Burnet, Commissioner, v. Chicago Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349; Liberty Baking Company v. Heiner (C. C. A.) 37 F.(2d) 703; Diamond Alkali Company v. Heiner (D. C.) 39 F.(2d) 645; Big Four Oil & Gas Co. v. Heiner (C. C. A.) 57 F.(2d) 29. All of these cases can and, indeed, must be distinguished from the case in hand, for in all of them the Commissioner signed. In this case he did not sign. Thus, undisturbed by interpretation, the plain words of the statute stand out as a command. The Commissioner's failure to obey, leaves the waiver in this case outside the statute and therefore renders it ineffective as an instrument to vary or extend the other provisions of the statute in respect to the collection of taxes. We hold the waiver void.

On December 30, 1927, the day before the expiration of the period for collection extended by the first waiver, the respondent executed the second waiver, effective until December 31, 1928.

Unlike the first waiver this one contains the name of the Commissioner signed by an acting collector, an officer of the department. Like the first waiver it also contains a reservation, more restricted however than the one in the first, to the effect that the taxpayer does not by signing the waiver "waive any rights which have accrued to the company under the provisions of section 250(d) of the Revenue Acts of 1918 and 1921 with respect to the statute of limitations."

As to the validity of the second waiver the government maintains that, even if the first be bad, the second is good, though it was not given until the time for collection had expired. Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335. In opposition, the respondent contends that the second waiver is void because not signed by the Commissioner himself and because the reservation is in respect solely of rights under the Revenue Acts of 1918 and 1921 (whose five-years limitation had expired) without reference to the one-year extension under the Revenue Act of 1926.

Assuming without deciding that the signature of the Commissioner, appended by a subordinate officer whose authority has not been questioned, satisfies the law, we are of opinion that the taxpayer's reservation of rights under prior statutes is a part of the waiver which the Commissioner accepted, and that as this reservation restricted the collection of taxes to the statutory period of five years, the instrument really waived nothing and is void. Moreover, if the first waiver be void, as we have held, the second cannot be valid because by its terms the second is made dependent on the first. At the time the second waiver was filed both the five-years statute and the six-years statute of limitations had expired. It follows that when, in October 1928, the credits of overpayments for 1917 and 1918 were made against the respondent's tax liability for 1920 the statutes had run. As they have not been validly extended the decision of the Board must be affirmed.