**BERTELSEN & PETERSEN ENGINEER-ING CO. v. UNITED STATES.**

No. 4146.

District Court, D. Massachusetts.

April 22, 1936.

Ray Henry, of Boston, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty., of Boston, Mass., for the United States.

SWEENEY, District Judge.

This is an action at law to recover $34,555.68, with interest, constituting a part of an admitted overpayment by the plaintiff on its income taxes for 1917. For the year 1918, the government assessed a deficiency tax against the taxpayer, and collected it by deduction from the amount overpaid in the previous year. The question before this court is whether the deficiency assessment for the year 1918 was barred by the statute of limitations as extended by waivers filed by the taxpayer. At a previous trial of this case the District Court Judge excluded evidence offered by the plaintiff for the purpose of explaining the duplication and inconsistency in certain waivers filed by the plaintiff. On appeal the Circuit Court sustained the plaintiff's contention that the Judge had erred in excluding this parol evidence, and the case was remanded to this court for further proceedings not inconsistent with its opinion. Bertelsen & Petersen Engineering Company v. United States of America (C.C.A.) 60 F.(2d) 745.

Findings of Fact.

The facts regarding the filing of the waivers are as follows: The five-year period during which additional assessment for the year 1918 might have been made expired June 16, 1924. The taxpayer signed five waivers purporting to extend this period.

Before passing to the fourth waiver, it is to be noted that the plaintiff received a letter from the government under date of October 25, 1924, requesting that a fourth waiver be signed "in view of the early expiration of the waivers at present on file from your corporation for the years 1917 and 1918." This is consistent with the plaintiff's contention that the third waiver was intended to be substituted for the previous two waivers, and it is apparent from the government's letter of October 25, 1924, that it so understood. I find that the third waiver serves to extend the limitation period to February 27, 1925, only.

A fourth waiver was filed on October 30, 1924, covering only the year 1918, and extended the time "one year after the expiration of the statutory period of limitations * * * as extended * * * by any waivers already on file with the Bur-

eau." It is perfectly obvious that on October 25, 1924, the government treated the three waivers then filed as expiring at an early date, and called the attention of the taxpayer to the fact that the waivers were about to expire. If the theory of "tacking" urged at this time was in existence then, the government would not have had an occasion to call for the new and fourth waiver, and there would not have been "an early expiration date."

On the receipt of the government's letter of October 25, 1924, the plaintiff checked the dates on the previous waivers, and, believing that the limitation period as extended by it was to expire on February 27, 1925, executed the fourth waiver intending to extend the period "one year after the expiration of the statutory period of limitations * * * as extended * * * by any waivers already on file" which would bring it in the light of the foregoing to February 27, 1926.

There was no evidence offered by the government to controvert the contention of the plaintiff, and, as a matter of fact, the plaintiff's witnesses were not cross-examined with relation to the four waivers referred to above. Government counsel addressed themselves entirely to the fifth waiver upon which great reliance is placed. I find, so far as the four waivers are concerned, that the statutory period of limitations was extended only to February 27, 1926, and that, unless the fifth waiver hereinafter discussed constituted a valid extension of the period of limitations to a date beyond the date of the assessment, which was July 27, 1926, the plaintiff is entitled to recover.

On July 27, 1926, a deficiency assessment of $34,555.68 was made against this plaintiff; notice of this assessment was not actually communicated to the plaintiff until October 11, 1927.

The facts surrounding the fifth waiver are as follows: On December 5, 1925, the government wrote to the plaintiff suggesting that "the statutory period as extended *by the waiver* (italics ours) now on file" was about to expire, and asked for the execution of another waiver extending the statutory limitation to December 31, 1926. It is obvious that at this time the government was not considering the theory of "tacking" the four waivers previously filed with it, since it referred to but one waiver, and it pointed out that that waiver would expire presently. This supports the finding of this court as to the intent of the parties respecting the four waivers.

There was no evidence that the plaintiff ever replied to the government's letter of December 5, 1925, requesting the signature of the fifth waiver. However, the waiver was executed by the plaintiff on December 10, 1925, and was received in the Special Assessment Section of the Treasury Department on December 21, 1925. The eleven-day delay between the date of execution and the date of its receipt by the government is explained by the following facts: On the receipt of the government's letter of December 5, 1925,· asking for the fifth waiver, the plaintiff executed the waiver, but instead of returning it to the government, forwarded it to the plaintiff's tax consultant in New York with instructions to determine the desirability of filing the waiver, and with directions not to file the waiver without specific authority from the plaintiff. The New York tax consultant received the waiver with the instructions from the plaintiff as set forth above, and he, in turn, forwarded the waiver to his Washington tax associate with the same instructions. In disregard of these instructions from his New York associate, the Washington tax consultant of the plaintiff filed the waiver, and did so without authority from the plaintiff who had never reached a decision to file the fifth waiver. The plaintiff contends that the actual filing does not constitute a valid waiver of the limitation period, since it was filed without the plaintiff's authority and consent. It further contends that the fifth waiver is invalid, first, because it was not signed by the Commissioner, and secondly, that if signed by the Commissioner such signature was not effective to validate the waiver because it was signed after the expiration of the limitation period as extended by the fourth waiver.

## Conclusions.

Considering first whether there has been a sufficient compliance with section 278(c) of the Revenue Act of 1924, 43 Stat. 299, 300, which provides as follows: "Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon." In the case of Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 329, 78 L.Ed.

647, it was held that the waiver itself need not be signed by the Commissioner, but that a notation on an assessment list attached to the certificate of additional assessments signed by the Commissioner was effective compliance with the statute. In the Stearns Case, there appeared on the assessment list attached to the certificate and opposite the item effecting the petitioner the words and figures as follows:

"7/31/17 Fisc. 1753361. O.L. 4/17/23; waiver."

. . When this case was before the Circuit Court of Appeals, there were but four waivers involved. After the case was remanded, a motion of the defendant to amend its answer so as to set up a fifth waiver was allowed.

Chronologically, the waivers were as follows: The first waiver was dated January 8, 1924, and covered only the 1918 tax. It extended the time to January 8, 1925. The second waiver was dated February 23, 1924, and covered the years 1917 and 1918, and was intended to be substituted for, and not to extend the waiver signed on January 8, 1924. The reason for filing this waiver was to include in the same waiver the returns for the years 1917 and 1918, because the plaintiff wished the period of both returns to expire on the same date inasmuch as both it and the government had treated the 1917 and 1918 returns together. So far as the waiver filed on January 8, 1924, and the waiver filed on February 23, 1924, were concerned, I find that it was intended by both parties that the period of limitation would be extended to February 23, 1925. A third waiver was dated February 27, 1924, which covered both the 1917 and 1918 returns, and was intended to extend the period of limitation one year from the date of its signature. This waiver was filed by the plaintiff because it had noted the possibility of a misunderstanding of the two waivers filed on January 8th and February 23, 1924, and to eliminate any suggestion that it intended to extend the limitation period of the 1918 return for two years. It was for the purpose of clarifying the two that had been previously filed, and supports the contention of the plaintiff that it never intended that there would be a "tacking" of the various waivers for in the third waiver it specified that the date was extended "for one year from the date it is signed by the taxpayer."

There were but two waivers filed in the Stearns Case; the first of which had been signed by the Commissioner, and by reference to the symbols above noted, it could be ascertained that the notation referred to the second or unsigned waiver. Having been able to trace the connection between the entry on the assessment list, and the waiver to which it referred, the court held that this was satisfactory compliance with the statute which called for the consent of the Commissioner in writing.

In the instant case, on July 27, 1926, an assessment certificate was signed by the Commissioner which was attached to the assessment list, and following the item referring to the petitioner there appeared on the assessment list the following:

"Remarks 1918 403152 R.A.R. waiver O.L. 1/23/26."

Under the theory laid down in the Stearns Case, if these notations can be construed as referring to the fifth waiver, then the Commissioner has complied with the statute if the notation were made at the proper time. For the purpose of connecting this entry, the government produced as a witness the chief of the Additional Assessments and Records Subsection of the Internal Revenue Bureau, who had charge of preparing the Commissioner's additional assessment list on which the entry here involved appeared. The most that can be gathered from his testimony was that the list was prepared in the first instance by an Elliot-Fisher operator; that it was then checked to determine whether a valid waiver was on file or the statute of limitations had not been waived; that those whose initials appeared on the list indicated by their signing their initials that they were satisfied that a valid waiver was on file. However, I am unable to conclude that any of the examining officials referred to the fifth waiver. Whether the entry of the word "waiver" on the additional assessment list was made in the mistaken belief that the fifth waiver was signed or under the theory now advanced by the plaintiff that the four previous waivers had not expired either by virtue of their own limitation, or under a theory of "tacking" has not been proven. No part of the entry on the assessment list is helpful to ascertain to which waiver the notation

on the assessment list referred, and from the evidence before me I am not satisfied that it refers to the fifth waiver. I therefore reach the conclusion that the Commissioner never consented in writing to the extension purported to be given by the fifth waiver, and that the fifth waiver is ineffective to extend the period of limitations. Commissioner of Internal Revenue v. United States Refractories Corporation (C.C.A.) 64 F.(2d) 69, affirmed Helvering v. United States Refractories Corporation, 290 U.S. 591, 54 S.Ct. 94, 78 L.Ed. 521.

■ Another objection to the validity of the fifth waiver is that the signature of the Commissioner, if it could be deemed a proper compliance with the statute, was not made within the life of the fourth waiver. Section 1106(a) of the Revenue Act of 1926 (44 Stat. 113) provided that:

"The bar of the statute of limitations against the United States in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability."

Since the limitation period as extended by the waivers expired on February 27, 1926, the liability also ceased on that date. The greatest extension of the limitation period under sections 283(c) of the Revenue Act of 1926 (44 Stat. 63) and section 277 (b) of the Revenue Act of 1924 (43 Stat. 299) would be to June 26, 1926. Even if the notation on the additional assessment list could be considered a proper compliance with the statute governing the consent of the Commissioner, nevertheless, it must have been exercised before June 26, 1926, or the liability was extinguished.

■ The subsequent repeal of this section by the Revenue Act of 1928, 45 Stat. 875, § 612, did not revive a dead liability or create a new obligation. Dobbins v. Commissioner of Internal Revenue (C.C.A.) 31 F.(2d) 935. Neither could the subsequent signing of the waiver, if it could be deemed such, serve to revive a liability that was clearly extinguished on June 26, 1926. It seems unnecessary to consider the contention of the plaintiff that the fifth waiver was filed without its consent or authority, as I am of the opinion that the case is disposed of on the other grounds set forth in this opinion.

The respondent's motion for judgment is denied. Judgment is given for the petitioner in the amount of $34,555.68, with interest to be agreed upon between the parties hereto or by a subsequent determination by this court if they are unable to agree; to be computed under 28 U.S.C.A. § 284(b).