plaintiff, while on the other hand the defendant charged with infringement will secure a decree saving him from multiplicity of suits for infringement." 269 U.S. at page 474, 46 S.Ct. at page 169.

This question and also the question of the right of an exclusive licensee to maintain an action without joining as a party plaintiff the licensor, where the licensor refuses to join, were fully discussed in Wing Engineering Corp. v. United States, Ct.Cl., 151 F.Supp. 314. In that case we held that an exclusive licensee was an "owner" of an undivided interest in the patent and, as such, was entitled to maintain an action in this court, notwithstanding the refusal of the licensor to join in the suit, for an unlawful use of the article by anyone other than the licensor, who in that case had reserved the right to use it. We shall not reiterate what we said there.

■ We hold that a licensee under an exclusive license for a limited use has the right to maintain an action in the name of the licensor for an unlawful use of the patent within this limited field, notwithstanding the refusal of the licensor to join in the suit.

Plaintiff's motion filed February 20, 1957 for the issuance of notice to Ferdinando Carlo Reggio is allowed. He is hereby notified of the pendency of these suits and he is required to appear and present any claim he may have in the subject matter of the litigation, in the absence of which he will be forever foreclosed by any judgment entered herein.

Defendant's motion to dismiss is overruled.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.

**PINE MOUNTAIN LUMBER COMPANY, Inc.**

v.

**The UNITED STATES.**

No. 150-55.

United States Court of Claims.
July 12, 1957.

**412**

Kenneth Liles, Washington, D. C., for plaintiff. Sutherland, Asbill & Brennan, Washington, D. C., were on the brief.

William A. Stern II, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

Plaintiff brings suit to recover the amount of $23,523.87 claimed to be due by reason of two contracts it had with the Government. The defendant does not defend the correctness of the claims, but resists recovery here on the ground that plaintiff is barred from bringing suit because its cause of action accrued more than six years prior to the filing of its petition on April 8, 1955, 28 U.S.C. § 2501.

The two contracts under which plaintiff is seeking recovery are No. W–09–026–eng–(MSP) 10448 calling for the furnishing of lumber to the Naval Air Station, Jacksonville, Florida, hereafter referred to as the "purchase order" contract, and No. W–09–026–eng–(MSP) 10363 providing for harvesting and manufacturing of trees located on Government land into lumber and crossties, and will be hereinafter referred to as the "lumber" contract. The "purchase order" contract was entered into on June 26, 1947, and numerous shipments were made thereunder by the plaintiff, but most of them were rejected and returned as not meeting contract requirements. A total of 56,307 FBM was accepted by the defendant and the amount due the plaintiff thereby aggregated $2,604.56. The "purchase order" contract was terminated by the Government for failure of the plaintiff to make deliveries, but no liquidated damages were assessed. Plaintiff has never received any part of the $2,604.56 due it for the deliveries that were accepted. The stipulation of fact filed by the parties with the Commissioner of this court fails to show the exact date that this contract was terminated, but the last delivery accepted by the Government was on August 1, 1947.

The "lumber" contract was entered into on June 16, 1947, and called for the plaintiff to furnish all plant, labor, materials, supplies and equipment necessary to manufacture approximately 36,000,000 FBM of lumber and crossties from standing timber owned by the Government at Camp Stewart Military Reservation, Hinesville, Georgia. The contract completion date, as extended, was January 31, 1951. Plaintiff would fell the Government-owned trees, manufacture them into the specified lumber products and haul them to a storage area for further processing or storage for future shipment. As deliveries were made, plaintiff would submit an itemized invoice, usually covering a week's production, showing the quantities manufactured during that week. Certain other deliveries were made from the sawmill site direct to a railroad siding and loaded on cars for shipment direct to a designated con-

signee. · Invoices were also prepared on these shipments. Both the invoices covering the shipments to the storage area and those to the railroad siding were processed by the Government for payment to the plaintiff.

Plaintiff was paid in full the contract unit price for shipments made direct to consignees while on shipments made into the storage area plaintiff was paid 70 percent of the unit contract price at the time of such delivery and later paid the remainder (30%) when the material was further processed, loaded.on cars or trucks, and accepted by the carrier for delivery to the consignee. The last shipment under the "lumber" contract from the storage yard to a consignee was made January 30, 1951. Payment on $20,919.-31 worth of invoices dated during the year 1948 for lumber delivered pursuant to the contract has been withheld by the Government and remains unpaid.

The invoices covering the $2,604.56 due on the "purchase order" contract and the $20,919.31 due on the "lumber" contract were referred by the Navy Central Disbursing Office and the Army Finance Officer, Atlanta, Georgia, respectively, to the General Accounting Office for application against a claimed indebtedness of Pine Mountain Lumber Company to the United States in the sum of $23,523.87.

The Pine Mountain Lumber Company was a partnership consisting of John J. Neely and Roy E. Neely as copartners doing business in Manchester, Georgia. On June 7, 1946, the plaintiff corporation was formed and issued all of its capital stock to the partnership in exchange for some of the partnership assets. At the time of incorporation of the plaintiff the partnership retained assets, including real property, and it was at all times pertinent to this opinion solvent. The partners themselves have always been financially able to respond to any claims of the Government. In 1947 John J. Neely and Roy E. Neely sold their stock in the plaintiff corporation to the present owners, R. C. Brooks and J. Lester Souter who are the sole stockholders in the Pine Mountain Lumber Company, Inc. Neither at the time of incorporation, nor at any time thereafter, did the plaintiff corporation make any agreement with either the partnership or the partners to pay any of the liabilities of the partnership or its partners.

In refusing the plaintiff payment of the $23,523.87 due on the two contracts, and forwarding invoices for that amount to the General Accounting Office for application against an alleged indebtedness of the partnership, the Government was apparently of the opinion that the Pine Mountain Lumber Company and the Pine Mountain Lumber Company, Inc. were one and the same entity. In accordance with its belief that the alleged debt of the partnership should be satisfied by the plaintiff, the General Accounting Office under date of April 11, 1949, issued certificates of settlement to the plaintiff in connection with the "lumber" and "purchase order" contracts. These certificates were signed for the Comptroller General of the United States and certified that there was owing the plaintiff the amount of $23,523.87. However the certificates further stated that the amount therein allowed was being applied to an indebtedness claimed to be due the United States on previous contracts with the partnership.

In defendant plaintiff's suit at this time, the Government does not argue that the General Accounting Office was correct in crediting amounts due the plaintiff on its contracts· against an alleged indebtedness claimed due from the partnership, and does not claim, should we find that plaintiff's suit was timely filed, that it is entitled to· offset any recovery by the amount of the partnership debt. There is ample evidence in the record to show that the Government should have determined that its claim lay against the partnership and or partners and not against the plaintiff corporation, a separate legal entity. Defendant only argues that plaintiff's claim is· now ·time barred and therefore no recovery can be had.

It is the position of the plaintiff that it has filed a timely suit, i. e., within six years of the time its claim first accrued. For support of this position plaintiff relies on two basic propositions: (1) that the certificates of settlement issued by the Comptroller General on April 11, 1949, represent an account stated and since plaintiff's petition was filed within six years of the rendering of the account the suit is timely; and (2) even if the certificates do not represent an account stated the suit is still timely with respect to the "lumber" contract because the completion date thereunder was less than six years prior to the time it filed its petition.

■ We think that plaintiff is correct in its contention that the certificates of settlement are an account stated. An account stated is a contract upon which suit may be brought. The consideration for the contract is the promise of the debtor, either expressed or implied, to pay the amount so stated and "must be founded on previous transactions of a monetary character creating the relationship of debtor and creditor." Williston on Contracts, vol. VI, rev. ed., § 1862. There is no question here of a previous transaction, but only whether there has been a promise to pay on the part of the debtor, i. e., Government.

We have many times held that the issuance by the Commissioner of Internal Revenue of a certificate of overassessment amounts to an implied promise to pay the amount shown to be due thereon, Wood v. United States, 17 F.Supp. 521, 84 Ct.Cl. 367; Goodenough v. United States, 19 F.Supp. 254, 85 Ct.Cl. 258. In the case of Marr v. United States, 106 F.Supp. 204, 123 Ct.Cl. 474, we held that the issuance by the Comptroller General of a certificate of settlement gave rise to a promise to pay. Therefore there is little doubt that if the certificate of settlement in this case contained only the statement of the amount due without the additional wording with regard to the application of the sum to an alleged debt of the plaintiff we would have a simple account stated upon which suit could be brought.

■■ It is a requisite of an account stated that debits and credits will be determined and an account struck for the balance. It is only for the balance that an account is stated, Holmes Mfg. Co. v. United States, 6 F.Supp. 438, 79 Ct.Cl. 263, and the cases cited therein. In other words a person claiming under an account stated may not pick and choose such items in the account that are favorable to him, but must take the whole account as stated. However, where a balance is struck in favor of a claimant and the debtor either denies or misapplies the payment of the amount so stated, the claimant has an action for the full amount notwithstanding the misapplication or denial of payment. This was precisely the situation in the Goodenough case, supra. There the Commissioner of Internal Revenue issued certificates of overassessment indicating an overpayment of taxes, but denied a full refund on the ground that part of the overpayment was barred because "no claim has been filed within the statutory period requesting refund of tax * * *". [19 F.Supp. 271] The small remaining amount of the overpayment not so barred was paid by the Commissioner and the taxpayer brought suit in this court to recover the amount that was withheld. The court in discussing the question of whether the issuing of the certificate of overassessment constituted an account stated said:

"* * * The defendant, however, contends that the refusal of the Commissioner to pay part of the overpayment prevents the certificate from being an account stated as to the balance unpaid. With this contention, we do not agree. In the case now before us, when the Commissioner presented the certificate of overassessment, he was stating in effect: 'Here is the account of your taxes. It shows that the Government owes you a certain amount but I will pay only part of it as the re-

mainder is barred by the statute of limitations'."

The court went on to hold that plaintiff could recover on an account stated notwithstanding the denial of payment by the Commissioner of Internal Revenue.

In the case presently before the court, the Comptroller General was saying that the Government owed plaintiff $23,523.87 by reason of contracts between the parties, but that he would not pay it because it was going to be applied to an alleged debt of the plaintiff. We can see very little difference between this type of situation and that presented to the court in the Goodenough case. Both involve an erroneous application of the amount stated to be due from the Government.

In Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018, the Commissioner of Internal Revenue determined an overpayment of taxes and issued a certificate of overassessment, which showed on its face that a majority of the overpayment was being credited to a tax liability of another year. The taxpayer sued for the entire overassessment evidenced by the certificate and the Government admitted that it had erroneously credited part of the overpayment to another year's taxes, but defended on the ground that refund was barred by the statute of limitations. The Supreme Court in allowing recovery held that the suit was not time barred because the cause of action arose out of the certificate and not the overpayment of taxes even though the Commissioner had credited part of the overpayment to taxes owed in another year. This was true even though the credit claimed by the Government was indicated on the certificate itself. See also Dorrance v. Phillips, 3 Cir., 85 F.2d 660, where recovery was allowed on an account stated where the certificates of overassessment showed part of the overpayment was being credited to taxes owed by another taxpayer.

■■■ The defendant says that the tax cases above cited and discussed are not apposite to the present situation because in those cases no claim ever arose in favor of the taxpayers until the Commissioner of Internal Revenue issued certificates of overassessment and second if the General Accounting Office did make an error it was one of fact and not law. We find no merit in these contentions of the defendant. There is no difference between a certificate of overassessment and a certificate of settlement insofar as applying the law of an account stated is concerned. A taxpayer's right does not arise solely because there has been a certificate of overassessment issued. He may sue for refund of taxes upon the denial of the Commissioner of his claim for refund or upon the failure of the Commissioner to act on such claim within six months of the time filed. Section 3772(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C. § 3772(a) (2). His rights under an account stated arise not because of the income tax laws, but because of the contractual relations created by that account. Also whether the mistake in applying the amount stated in the account was one of law or fact is of no consequence. The fact remains that payment was not made and suit may be brought by reason thereof. We hold that the certificates of settlement issued by the Comptroller General on April 11, 1949, were an account stated for the sum of $23,523.87. The denial of payment and application of the amount shown to be due thereon to an alleged debt of the plaintiff did not create a new balance, to which plaintiff would be bound under the ruling in the Holmes case, supra. The implied promise was to pay the full $23,523.87, but the denial thereof was due to an erroneous conclusion of fact by the Government. Plaintiff's suit is therefore not barred by the statute of limitations.

Since the Government does not contend that the General Accounting Office was correct in applying the amount due the plaintiff on its contracts to an alleged debt of the Pine Mountain Lumber Company partnership, plaintiff may recover the full amount as stated in the

certificates of settlement issued by the Comptroller General on April 11, 1949. Due to the fact that plaintiff is entitled to recover on the theory of an account stated we will not take up the issue of whether it could have recovered under the "lumber" contract.

Judgment will be entered for the plaintiff in the amount of $23,523.87.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

Frank Stone LOYD and J. Easley Edmunds, Jr., Executors Under the Will of Grace Stone Keller, Deceased,

v.

The UNITED STATES.

No. 91-56.

United States Court of Claims.

July 12, 1957.

