**LUCKENBACH STEAMSHIP COMPANY, Inc., Libelant,**

**v.**

**UNITED STATES of America, Respondent.**

United States District Court
S. D. New York.

Nov. 2, 1960.

Burlingham, Hupper & Kennedy, New York City, Kominers & Fort, Washington, D. C., for libelant. Norman M. Barron, New York City, J. Franklin Fort, T. S. L. Perlman, Washington, D. C., of counsel.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, for respondent. Ben-

jamin H. Berman, Attorney in Charge, Admiralty and Shipping Section, Dept. of Justice, New York City, Clare E. Walker, Atty., Admiralty and Shipping Section, Dept. of Justice, New York City, of counsel.

HERLANDS, District Judge.

By a libel filed January 30, 1959, libelant seeks to recover $30,169, withheld from it by agencies of the United States Government. Presently before the court is respondent's exception to the libel which seeks its dismissal on the ground that it was not timely filed on January 30, 1959.

The period of limitations under both the Suits in Admiralty Act, 41 Stat. 525, 46 U.S.C.A. § 745, and the Public Vessels Act, 43 Stat. 1112, 46 U.S.C.A. § 782 is two years. See Phalen v. United States, 2 Cir., 1929, 32 F.2d 687.

The question is: When did the libelant's claim arise for purposes of applying the applicable statutory time-bar?

The respondent in support of its exception argues:

1. To the extent libelant sues for freight earned on or before the end of 1952, the cause of action arose no later than the end of that year.

2. To the extent libelant claims under the charters, the cause of action arose in April of 1946, when the charters were terminated.

3. Even if the negotiations following libelant's November 9, 1955 letter renewed its claim for the purpose of the statute of limitations, a new statute of limitations started to run February 21, 1956, when the Maritime Administration advised libelant that it would not pay the money in issue.

4. The limitation expressed in the Suits in Admiralty Act may not be waived except by Act of Congress; and there was no waiver here.

Libelant supports the timeliness of its libel on the ground that the cause of action arose on February 28, 1957, when the Government approved public vouchers stating the amount due and then withheld the funds. Libelant argues that the return of these approved vouchers to it gave rise to an account stated, and that this alleged account stated constitutes the cause of action on which libelant is now claiming. It is to be noted that the alleged account stated is for $30,169. The amount collected by the Government from libelant in 1951 and 1952 was $30,569.

The decisive question may thus be rephrased as: whether the vouchers approved by the Maritime Administration on February 28, 1957 constitute an account stated between the Government and libelant.

The following are the pertinent facts:

During World War II, the Government, through the War Shipping Administration, operated libelant's vessels SS Horace Luckenbach and SS Susan B. Luckenbach under requisition charters. Some time after their termination, the Maritime Administration (or its predecessor, the Maritime Commission) concluded that libelant was indebted to the Government for various repairs to the vessels in connection with the requisition charters in the amounts of $13,456 on the SS Horace Luckenbach and $17,113 on the SS Susan B. Luckenbach—a total of $30,569.

The Government collected this amount ($30,569) from libelant during 1951 and 1952 by deducting said amount from moneys due to libelant from agencies of the Government. These moneys were owing primarily for the carriage of intercoastal freight. Libelant asserts (Libel, para. 6) that the parties agreed that, pending an audit of the repair contracts and records relating to such repairs, libelant would pay over the amounts in dispute and the sums would be refunded if that was called for by the results of the audit. Respondent denies the alleged agreement and asserts that the payments were unconditional and not subject to refund upon the occurrence of any condition.

By letters dated November 9, 1955 and January 6, 1956, libelant requested refund of the amount paid on the ground that libelant had made double payment, once by paying the repair contractors and a second time through the Government offset. (The letters are Exhibits 3 and 4 attached to libelant's answers to interrogatories.)

By letter dated January 19, 1956 from Wesley C. Clark, Chief, Division of Credits and Collections of the Maritime Administration to the libelant, the Government stated:

"If you are in accord with the foregoing schedule, it is requested that you forward this office a public voucher in the amount of $13,056.-00, which will be processed for payment." (Exhibit 5, libelant's answers to interrogatories)

The letter referred to the SS Horace Luckenbach and concluded that $13,056.-00 was the amount of the refund due to the company.

By letter dated January 13, 1956, signed by Wesley C. Clark, the Maritime Administration advised the libelant that its claim for refund in regard to the SS Susan Luckenbach was a proper one. The letter stated:

"Therefore, if you will prepare a public voucher in the amount of $17,113.00 and forward same to this office, it will be placed in line for payment." (Exhibit 8, libelant's answers to interrogatories)

Libelant submitted to the Maritime Administration vouchers covering the agreed refunds (Exhibits 7 and 9, libelant's answers to interrogatories). The vouchers are dated January 18 and 26, 1956.

On February 21, 1956, Clark again wrote to libelant (Exhibit 6, attached to answers to interrogatories). In this letter, he referred to the bills which the libelant had submitted covering the refunds due to it and explained that the bills fall within Public Law 862 (80th Congress, 2d Session) 62 Stat. 1196, because they concern vessels involving requisition charters. He explained that, under this law, the Government was obligated to deduct from moneys owing to the company any moneys which the libelant owed to the United States. The letter points out that there were on the books of the Maritime Administration, invoices against the libelant in the net amount of $60,874.08, and that the Maritime Administration would have to apply the amount of the refund due against the invoices. However, he stated that they would defer the processing of the vouchers for thirty days in order to give the libelant the opportunity to pay the open invoices. If this was done, the refund vouchers would be placed in line for payment. If this was not done, the refund would be offset against the invoices.

On February 28, 1957, more than one year later, the Maritime Administration approved and returned the vouchers to libelant. (The total was $30,169.) It is important to observe that each voucher returned bore a notation that the amount due thereunder "has been applied against our invoice No. MA–NY 54–229."

■ The term "account stated" refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due. This promise gives rise to a new duty to pay the sum so fixed. The promise may be either express or implied but it "must be founded on previous transactions creating the relationship of debtor and creditor." 6 Williston on Contracts, sections 1862–1864 (Rev.Ed.1938); Restatement, Contracts, section 422, p. 794 (1932).

■ It is not disputed that the statement of an account gives rise to a new cause of action. The issue before the court is whether an account stated came into existence by virtue of the Maritime Administration's approval and return to libelant of the public vouchers.

Libelant submits that Bonwit Teller & Company v. United States, 1931, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018

is controlling on this issue. In that case, plaintiff overpaid its income taxes for 1919. In 1926, it filed a claim for refund. In 1927, plaintiff received a certificate of overassessment. The certificate indicated the amount of the overassessment for 1919 and deducted from it the amount of the Government's claim upon a deficiency assessment for 1917. A check for the difference was enclosed. At the time of the deduction, the 1917 tax was barred by the statute of limitations. Plaintiff sued to recover the balance deducted. The Government defended on the ground that the claim for 1919 overpayments was barred by the statute of limitations. In rejecting the Government's claim, the Court stated (283 U.S. at page 265, 51 S.Ct. at page 398):

"The action is not for the overpayment of the tax in 1919, but is grounded upon the determination evidenced by the certificate issued by the Commissioner May 12, 1927. Upon delivery of the certificate to plaintiff, there arose the cause of action on which this suit was brought."

Libelant relies also on Pine Mountain Lumber Company, Inc. v. United States, 1957, 153 F.Supp. 411, 139 Ct.Cl. 164. In that case, the Comptroller General issued certificates of settlement, which provided for a set-off. The Court of Claims held it to be an account stated. The case is distinguishable because in that case the Government erroneously set off against the plaintiff a claim it had against a separate legal entity and not against the plaintiff itself. The Court of Claims relied heavily on the Bonwit Teller case, supra, for the proposition that the certificates constituted an account stated.

The facts in the Bonwit Teller case are parallel to those in the instant case. However, subsequent decisions of the Supreme Court and of the lower courts strongly indicate that the Bonwit Teller case would not compel a finding of an account stated on the facts at bar.

In Daube v. United States, 1933, 289 U.S. 367, at pages 372–373, 53 S.Ct. 597,

at page 599, 77 L.Ed. 1261, Mr. Justice Cardozo, in dictum, stated:

"By the ruling in the Bonwit Teller case a specific limitation applicable to claims for the recovery of taxes is set aside and superseded whenever the statement of an account sustains the inference of an agreement that the tax shall be repaid. As soon as this appears, a fresh term of limitation is born and set in motion. It is a ruling not to be extended through an enlargement of the concept of an account stated by latitudinarian construction."

A fact situation closely similar to the present one was before the Court in Leisenring v. United States, 1933, 3 F. Supp. 853, 78 Ct.Cl. 171, motion for new trial overruled, Ct.Cl.1933, 4 F.Supp. 993, certiorari denied 1933, 291 U.S. 682, 54 S.Ct. 558, 78 L.Ed. 1069. In that case, the Commissioner of Internal Revenue had delivered to plaintiff's decedent (plaintiff was the executor) a certificate of overassessment indicating an overassessment of $77,338.94, a refund of $42,-524.90 and a credit of $34,814.04 to taxes owed to the Government by the deceased. The plaintiff requested of the Government the amount credited to the 1917 tax on the ground that the 1917 tax had not been collected during the statutory period. The Commissioner refused the request and a suit resulted. The issue before the court was whether the certificate of overassessment was an account stated for the credit item of $34,814.04. In reaching its decision, the court considered both the Bonwit Teller case and the Daube case. The court held that the certificate did not constitute an account stated, since it did not sustain an inference that the $34,814.04 would be repaid to the taxpayer. Referring to the plaintiff's argument that the Bonwit Teller case is controlling on the issue of whether the certificate constituted an account stated, the court said (32 Supp. at page 858):

"When the Bonwit Teller Case was submitted to this court, there was not a line or even a word said

in the brief of counsel for either party with reference to an account stated. * * * The Supreme Court therefore had no occasion to consider whether the facts in the case supported an account stated, and we do not think [that] it intended to determine that question."

In Stearns Co. of Boston, Mass. v. United States, 1934, 291 U.S. 54, at page 65, 54 S.Ct. 325, at page 329, 78 L.Ed. 647, the Court said that, to constitute an account stated:

"A balance must have been struck in such circumstances as to import a promise of payment on the one side and acceptance on the other."

One of the issues before the Court in that case was whether a certificate of overassessment issued to the plaintiff constituted an account stated. On its face the certificate indicated only the amount of the overassessment which had been paid by the taxpayer. No set-off appeared on the certificate as appears on the vouchers in the case at bar. Yet the Supreme Court refused to find the necessary implied promise to pay which is a prerequisite to an account stated. The Court (291 U.S. at page 65, 54 S.Ct. at page 329) pointed out:

"The taxpayer knew that the Commissioner had been requested, after determining the overassessment, to set it off against the tax for an earlier year."

The Court (291 U.S. at page 66, 54 S.Ct. at page 329) further stated:

"At most the promise to be implied is one to refund the excess after there has been a computation of the taxes unpaid for other years and an ascertainment of the balance."

In the case at bar, the vouchers themselves clearly indicated the set-off, thus providing an even stronger ground for not implying a promise to pay on the part of the Maritime Commission.

In Bertelsen & Petersen Engineering Co. v. United States, D.C.Mass.1936, 14 F.Supp. 868, affirmed 1 Cir., 1938, 95 F.2d 867, affirmed on rehearing 1 Cir., 1938, 98 F.2d 132, affirmed 1936, 306 U.S. 276, 59 S.Ct. 541, 542, 83 L.Ed.2d 647, the Commissioner transmitted to the taxpayer a certificate of overassessment which disclosed an overpayment by the taxpayer of 1917 tax in the amount of $91,570.34, of which the Commissioner ordered refunded to taxpayer approximately $55,000 and credited $34,555.68 to taxpayer's 1918 deficiency. The district court found that the deficiency assessment for the year 1918 was barred by the statute of limitations, and that the plaintiff could recover the $34,555.68.

In affirming, the Supreme Court said (with respect to the opinion of the Court of Appeals):

"And we accept the conclusions stated in the following excerpt from its opinion: ' * * * It cannot be said that the certificate of overassessment constituted an account stated between the government and the taxpayer, since the taxpayer refused to assent to the application of any part of the overpayment to a deficiency tax for 1918. To constitute an account stated there must be an agreement as to liability and the amount due. * * * ' "

Libelant contends that Maritime Commission's approval of the vouchers in question constitutes an account stated. The contention is not correct. Each voucher, in addition to the amount due, contained the notation that this amount had been applied against a Government invoice. There was no agreement as to the amount due; no promise to pay; and no basis at all for implying one.

The libel is dismissed with costs to respondent. Settle order on notice.